Edward J. Green (IL BAR NO. 6225069) (*PRO HAC VICE*)
Geoffrey S. Goodman (IL BAR NO. 6272297) (*PRO HAC VICE*)
Foley & Lardner LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: egreen@foley.com
Email: ggoodman@foley.com

DAVID GOULD (CA Bar No. 37947)
DAVID GOULD, A PROFESSIONAL CORPORATION
23975 Park Sorrento, Suite 200
Calabasas, CA 91302-4001
Telephone: 818.222.8092
Facsimile: 818.449.4803
Email: dgould@davidgouldlaw.com

Attorneys for Debtor and
Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

IN RE:

PACIFICA OF THE VALLEY CORPORATION,[1]

    DEBTOR.

CASE NO. 1:09-bk-11678-MT

CHAPTER 11

MEMORANDUM IN SUPPORT OF
CONFIRMATION OF THE DEBTOR'S
SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION, AS MODIFIED

PLAN CONFIRMATION HEARING:

DATE: DECEMBER 15, 2010
TIME: 1:00 P.M.
CTRM: 302
U.S. BANKRUPTCY COURT
21041 BURBANK BOULEVARD
WOODLAND HILLS, CA 91367

---

[1] The Debtor in this proceeding is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (Tax ID No. 33-0737312), with a mailing address of 9449 San Fernando Rd., Sun Valley, CA 91352-1421.

CHIC_5133395.1

Pacifica of the Valley Corporation (the "Debtor"), debtor and debtor-in-possession in the above-captioned case, hereby submits this Memorandum in support of Confirmation of the Debtor's Second Amended Chapter 11 Plan of Reorganization, as modified (the "Plan"), and respectfully states as follows:[2]

## I.    INTRODUCTION

The Debtor is pleased to report that, after an almost two-year stint in chapter 11, the Debtor has proposed a consensual Plan that (a) is supported by all of the Debtor's major creditor constituencies, (b) received only affirmative votes in favor of the Plan (i.e., not a single creditor voted against confirmation of the Plan), and (c) was not the subject of any objections by the December 10, 2010 objection deadline.

The Debtor's chapter 11 case began on February 17, 2009 (the "Petition Date") when it filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.    The Debtor is continuing in possession of its properties and is operating and managing its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, subject to the control and supervision of this Court.

On September 14, 2010, the Debtor filed its initial version of the Plan and accompanying Disclosure Statement (the "Disclosure Statement").    On November 16, 2010, the Debtor filed an amended Disclosure Statement and Plan.    On November 17, 2010, this Court entered an Order: (A) Approving Disclosure Statement; (B) Scheduling a Hearing on Confirmation of the Debtor's Second Amended Chapter 11 Plan of Reorganization; (C) Approving Solicitation Packages and Procedures for the Distribution of the Disclosure Statement; (D) Approving Form of Ballots; and (E) Establishing Voting Deadlines and Procedures for Tabulation of Votes (the "Disclosure Statement Order") [Docket No. 584].

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

A hearing on confirmation of the Plan (the "Confirmation Hearing") is scheduled for December 15, 2010 at 1:00 p.m. In connection with the Confirmation Hearing, the Debtor submits this Memorandum in Support of Confirmation of the Plan (the "Memorandum"). This Memorandum (a) addresses the requirements set forth in the Bankruptcy Code for confirmation of a plan, and (b) summarizes certain non-material amendments to the Plan that the Debtor has made to address comments by third parties and clarify certain issues.

In support of this Memorandum, the Debtor submits (i) the Declaration of Katherine E. Hall Certifying Voting on and Tabulation of Ballots Accepting and Rejecting the Debtor's Second Amended Chapter 11 Plan of Reorganization (the "Hall Declaration"), attached hereto as Exhibit A,[3] (ii) the Declaration of Ayman Mousa in Support of Confirmation of the Debtor's Second Amended Joint Plan of Liquidation, as Modified (the "Mousa Declaration"), attached hereto as Exhibit B, and (iii) the Declaration of Larry Tyrrell in Support of Confirmation of the Debtor's Second Amended Joint Plan of Liquidation, as Modified (the "Tyrrell Declaration"), attached hereto as Exhibit C.

## II.    OVERVIEW OF THE PLAN

The Plan provides for a reorganization of the Debtor's estate and the continued operation of the Debtor's hospital in Sun Valley, CA. Under the Plan, the Debtor will obtain a term loan (the "Sun Term Loan") from Sun Capital Healthcare, Inc. ("Sun"), the entity that provided a pre-petition and post-petition factoring facility for the Debtor's accounts receivable, in the amount of $2.5 million to fund the Debtor's operation of its hospital after the Effective Date.

---

[3] The Hall Declaration has already been filed with this Court as a stand alone document on December 10, 2010 [Docket No. 593].

Sun will also receive (a) cash on the Effective Date on account of the Sun AR Tranche (approximately $4.75 million), and (b) the Sun Promissory Note, in the amount of $17,860,000, on account of the Sun DSH Tranche. The Sun Promissory Note matures on the date that is seven years after the Effective Date.

Health Care REIT, Inc. ("HCREIT"), the current holder of a senior deed of trust on the Debtor's real estate, improvements, fixtures and equipment, will receive the HCREIT Promissory Note on account of its claims against the Debtor, as well as the approximately $3.8 million HCREIT Cash Payment on the Effective Date ($2,644,000 of which will be applied to the principal amount of the HCREIT Promissory Note). The Debtor will pay off the HCREIT Promissory Note over a thirty-six (36) month period following the Effective Date.

Holders of General Unsecured Claims will receive a Pro Rata Interest in the General Unsecured Promissory Note on account of their claims. The General Unsecured Promissory Note will have a principal amount equal to $4,575,000. The General Unsecured Promissory Note also matures on the date that is seven years after the Effective Date. At the time of any payment by the Reorganized Debtor on account of the Sun Promissory Note, the Reorganized Debtor shall pay an amount equal to twenty-five percent (25%) of such payment on account of the General Unsecured Promissory Note.

Holders of Subordinated Claims in Class 7 and holders of Equity Interests in Class 8 will receive no distributions under the Plan and their votes were not solicited.

On the Effective Date and simultaneously with the vesting of the Debtor's assets in the Reorganized Debtor, the Reorganized Debtor shall enter into the Recapitalization Agreement, which shall be approved pursuant to the Confirmation Order. The Recapitalization Agreement is the document pursuant to which the Reorganized Debtor will issue 100% of the New Stock in the Reorganized Debtor to Paul R. Tuft ("Tuft") on the Effective Date and simultaneously with the vesting of assets in the

Reorganized Debtor.  Accordingly, Tuft will hold and own all of the New Stock in the Reorganized Debtor as of the Effective Date.

### III.    VOTING ON THE PLAN

Pursuant to the Plan and the Disclosure Statement, Class 2 (HCREIT Claims), Class 3 (Sun Claims), Class 4 (Secured Tax Claims), Class 5 (Other Secured Claims) and Class 6 (General Unsecured Claims) are Impaired and entitled to vote to accept or reject the Plan.  The deadline for submitting ballots to accept or reject the Plan was December 8, 2010 at 4:00 p.m. Pacific Time.   The table below summarizes the voting on the Plan.

| CLASS | NO. OF HOLDERS ACCEPTING | % OF HOLDERS ACCEPTING | DOLLAR AMOUNT ACCEPTING |
|---|---|---|---|
| Class 2 – HCREIT Claims | 1 | 100% | $9,212,804.17 |
| Class 3 – Sun Claims | 1 | 100% | $23,079,731.59 |
| Class 4 – Secured Tax Claims | 1 | 100% | $1,689,617.63 |
| Class 5 – Other Secured Claims | N/A | N/A | N/A |
| Class 6 – General Unsecured Claims | 18 | 100% | $2,551,353.20 |

Classes 2, 3, 4 and 6 thus voted to accept the Plan.  *Indeed, every single creditor voting on the Plan voted to accept the Plan.*  Class 5 did not vote to accept or reject the Plan only because none of the few members of that Class submitted a ballot. The results of the Debtor's solicitation of votes under the Plan are set forth in greater detail in the Hall Declaration.

## IV.    THE PLAN SHOULD BE CONFIRMED BECAUSE IT SATISFIES THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE

The Court should confirm the Plan because it satisfies the requirements of section 1129 of the Bankruptcy Code. Section 1129 provides two routes by which a plan can be confirmed. A plan that complies with each of the sixteen requirements of section 1129(a) should be confirmed. Alternatively, if a plan does not meet the requirements of section 1129(a)(8) because all impaired classes do not accept the plan, it may nevertheless be confirmed if it satisfies section 1129(b), as well as the other fifteen section 1129(a) requirements.

### A.    The Plan Meets the Requirements of Section 1129(a)

The Plan fully complies with the provisions of section 1129(a) of the Bankruptcy Code. Although the Plan was not accepted by all Impaired Classes, the Court should confirm the Plan it because it meets each of the additional requirements of section 1129(b), as discussed below in Section IV.B.

#### 1.    Section 1129(a)(1) (Plan Compliance with Title 11)

Section 1129(a)(1) requires that a plan comply with all applicable provisions of the Bankruptcy Code. These provisions include section 1122 of the Bankruptcy Code, which governs the classification of claims, and section 1123 of the Bankruptcy Code, which sets forth the mandatory and permissive contents of a plan. See S. Rep. No. 95-589, at 126 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368. Determining whether the Plan complies with section 1129(a)(1) thus requires an analysis of sections 1122 and 1123 of the Bankruptcy Code. See In re Johns-Manville Corp., 68 B.R. 618, 629-30 (Bankr. S.D.N.Y. 1986) (noting that confirmation objections under section 1129(a)(1) typically involve the failure of a plan to satisfy either section 1122 or 1123 of the Bankruptcy Code), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), aff'd, 843 F.2d 636 (2d Cir. 1988).

### a.    Section 1122 (Classification in General)

In general, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). The requirement of substantial similarity does not mean that claims within a particular class must be identical. See Hanson v. First Bank of South Dakota, N.A., 828 F.2d 1310, 1313 (8th Cir. 1987); In re DRW Property Co., 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986). The focus is on the nature of the claims being classified as they relate to a debtor's assets. See In re Martin's Point Ltd. P'ship, 12 B.R. 721, 725 (Bankr. N.D. Ga. 1981); In re Los Angeles Land and Investments, Ltd., 282 F. Supp. 448, 453 (D. Haw. 1968), aff'd, 447 F.2d 1366 (9th Cir. 1971).

Here, Article III of the Plan designates a total of eight Classes of Claims and Equity Interests. Each Class of Claims and Equity Interests — Priority Claims, HCREIT Claims, Sun Claims, Secured Tax Claims, Other Secured Claims, General Unsecured Claims, Subordinated Claims and Equity Interests — represents distinct Claims and Equity Interests against or in the Debtor's Estate and are substantially similar to each Claim or Equity Interest in their respective Classes. The classification scheme set forth in the Plan thus complies with the requirements of section 1122 of the Bankruptcy Code.

### b.    Section 1123 (Mandatory and Permissive Provisions of the Plan)

Section 1123 of the Bankruptcy Code sets forth the mandatory and permissive contents of a plan. The Plan complies with section 1123 because it contains each of the mandatory provisions listed in section 1123(a), as well as some of the permissive provisions listed in section 1123(b).

**(1)    Section 1123(a) (Mandatory Provisions)**

Designation of Classes of Claims and Interests.  Section 1123(a)(1) of the Bankruptcy Code requires that a plan "designate . . . classes of claims, other than claims of a kind specified in section 507(a)(2) (Administrative Expense Claims), 507(a)(3) ("gap" claims in involuntary cases), or 507(a)(8) (Priority Tax Claims) of this title, and classes of interests." 11 U.S.C. § 1123(a)(1).  The Plan complies with section 1123(a)(1) because the Plan designates Classes of Claims and Equity Interests.  In addition, in accordance with section 1123(a)(1), the Plan does not classify Administrative Expense Claims or Priority Tax Claims.[4]

Specification of Unimpaired Classes.  Section 1123(a)(2) of the Bankruptcy Code provides that a plan must "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2).  Accordingly, Section 4.1 of the Plan indicates that Class 1 is Unimpaired under the Plan.

Specification of Treatment of Impaired Classes.  Under section 1123(a)(3) of the Bankruptcy Code, a plan must "specify the treatment of any class of claims or interests that is impaired under the plan."  11 U.S.C. § 1123(a)(3).  The Plan designates Classes 2 through 8 as Impaired because the legal, equitable or contractual rights of Claims and Equity Interests in those Classes are altered under the Plan.  See 11 U.S.C. § 1124(a)(1).   The Plan complies with section 1123(a)(3) in that Sections 5.2 through 5.8 of the Plan specify the treatment of Claims and Equity Interests in Classes 2 through 8.

Same Treatment of Claims within a Class.  The Plan satisfies section 1123(a)(4) of the Bankruptcy Code, as Article III of the Plan provides the same treatment for each Claim or Equity Interest within a particular Class.

---

[4] The Debtor filed a voluntary petition and thus there are no claims of the kind specified in section 507(a)(3).

Adequate Means for Implementation of the Plan.  Section 1123(a)(5) of the Bankruptcy Code requires that a plan "provide adequate means for the plan's implementation" and lists several examples of what may constitute "adequate means." 11 U.S.C. § 1123(a)(5)(A)-(J).   Article VI and various other provisions of the Plan specifically provide adequate means for the Plan's implementation, including, without limitation:  (i) the vesting and retention of all property of the Estate, including all claims, rights and Causes of Action, other than Assigned Causes of Action, in the Reorganized Debtor, as of the Effective Date, free and clear of all Claims, Liens, charges, other encumbrances, and Equity Interests; (ii) funding for the Plan in accordance with the provisions of the Plan, including the Sun Term Loan; (iii) the Reorganized Debtor's entry into the Recapitalization Agreement with Tuft, which shall be approved pursuant to the Confirmation Order; (iv) appointment of the Class 6 Creditor Trustees to administer the Class 6 Creditor Trust for the benefit of holders of Allowed General Unsecured Claims; and (v) closing of the Debtor's chapter 11 case.  In addition, the Tyrrell Declaration sets forth that the Reorganized Debtor will have sufficient funds to make the distributions required to be made under the Plan on the Effective Date and thereafter.

Prohibition on the Issuance of Nonvoting Equity Securities.   Section 1123(a)(6) of the Bankruptcy Code provides that a plan for a corporate debtor must provide that the debtor's corporate charter will prohibit the issuance of nonvoting equity securities.  The Debtor's Amended Certificate of Incorporation and Bylaws shall include all information required under section 1123(a)(6).

Selection of Officers and Directors.  Section 1123(a)(7) of the Bankruptcy Code states that a plan shall "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee."  11 U.S.C. § 1123(a)(7).

Here, the Plan provisions providing for the selection of Officers and members of the Board of Directors are consistent with the interests of creditors and equity security holders and with public policy.  See Plan §§ 1.69, 6.8.

### (2)    Section 1123(b) (Permissive Provisions)

Section 1123(b) of the Bankruptcy Code describes certain permissive plan provisions.  The Plan contains several of these provisions, including.

Assumption or Rejection of Executory Contracts.  Section 1123(b)(2) of the Bankruptcy Code permits a plan to "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor . . . ."  11 U.S.C. § 1123(b)(2). Consistent with this provision, Section 9.1 of the Plan provides in relevant part that, "[e]xcept as otherwise provided in the Confirmation Order, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, all remaining Executory Contracts and Unexpired Leases that exist between the Debtor and any Person shall be deemed rejected as of the Effective Date, except for any Executory Contract or Unexpired Lease (i) that has been assumed, assumed and assigned or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, or (ii) as to which a motion for approval of the assumption, assumption and assignment or rejection has been filed prior to the later of (x) the Effective Date, or (y) January 31, 2011."[5]

Provisions not Inconsistent with the Bankruptcy Code.  Section 1123(b)(6) of the Bankruptcy Code provides that a plan may contain other appropriate provisions provided that such provisions are not inconsistent with the Bankruptcy Code.  The Plan contains other such provisions.  These provisions are appropriate provisions pursuant to section 1123(b)(6) that do not violate the Bankruptcy Code.

---

[5] The Debtor has made a minor revision to Section 9.1 of the Plan that is discussed in Section VI below.

In sum, the Plan complies with the classification provisions of section 1122, as well as the mandatory and permissive provisions of section 1123.  Accordingly, the Plan satisfies the requirements of section 1129(a)(1).

### 2.    Section 1129(a)(2) (Proponent Compliance with Title 11)

Section 1129(a)(2) requires that the proponent of a plan comply with the applicable provisions of title 11.  The legislative history to section 1129(a)(2) indicates that the principal purpose of this section is to ensure compliance with the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code.  See In re Michelson, 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992) ("Compliance with the disclosure and solicitation requirements is the paradigmatic example of what the Congress had in mind when it enacted section 1129(a)(2)."); In re Seatco, Inc., 257 B.R. 469, 479 (Bankr. N.D. Tex. 2001) ("Most courts that have analyzed section 1129(a)(2) have concluded that the 'principal purpose of § 1129(a)(2) of the Bankruptcy Code is to assure that the plan proponents have complied with the disclosure requirements of § 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the plan.'") (citations omitted). The Debtor has complied with the applicable provisions of the Bankruptcy Code, including the provisions of section 1125 regarding disclosure and plan solicitation.

Section 1125 prohibits the solicitation of acceptances or rejections of a plan from holders of claims and interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information."  11 U.S.C. § 1125(b).  Here, the Court approved the Disclosure Statement by the Disclosure Statement Order, entered on November 17, 2010 that, among other things, specifically found that the Disclosure Statement contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code.  In addition, the Court considered and, in the Disclosure Statement Order, approved, among other things, (a) all materials to be

transmitted to holders of Claims entitled to vote on the Plan (collectively, the "Solicitation Materials"), including a notice of the Confirmation Hearing and related matters (the "Confirmation Hearing Notice"); (b) the timing and method of delivery of the Solicitation Materials; and (c) the procedures for tabulating votes to accept or reject the Plan.

Thereafter, as set forth in the Hall Declaration, the Debtor transmitted the Solicitation Materials to holders of Claims, Equity Interests and other parties-in-interest, which contained:  (a) the Disclosure Statement with exhibits, including the Plan; (b) the Disclosure Statement Order; (c) the Confirmation Hearing Notice; and (d) for holders of Claims entitled to vote on the Plan, the applicable Ballot and voting instructions.  The Solicitation Packages were transmitted by the Debtor by the deadline of November 19, 2010 set forth in the Disclosure Statement Order.

The Debtor thus has complied with the applicable provisions of the Bankruptcy Code, including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, and has acted in good faith within the meaning of section 1125(c) of the Bankruptcy Code.  As a result, the Plan meets the requirements of section 1129(a)(2) of the Bankruptcy Code.

### 3.    Section 1129(a)(3) (Good Faith)

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  "A chapter 11 plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the bankruptcy code."  In re Howard Marshall, 298 B.R. 670, 675 (Bankr. C.D. Cal. 2003).  The determination of whether a plan will likely achieve a result consistent with the objectives and purposes of the Bankruptcy Code is made in "light of the particular facts and circumstances . . . ."  In re Apex Oil Co., 118 B.R. 683, 703 (Bankr. E.D. Mo. 1990) (citation omitted).

A review of the Plan and the process leading to its proposal demonstrates the Debtor's good faith. <u>First</u>, consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, the Plan is designed to allow the Debtor to reorganize by providing it with a capital structure that will allow it to satisfy its obligations with sufficient liquidity and capital resources and to otherwise conduct its business. <u>Second</u>, the Plan itself, and the process leading to its formulation, including arms' length negotiations among the Debtor, the Committee, Sun, HCREIT and several other parties, provide additional and independent evidence of the Debtor's good faith. <u>Third</u>, the Plan provides for substantial distributions to holders of Allowed General Unsecured Claims in Class 6 in an effort to provide significant value to the Debtor's stakeholders. <u>See</u> <u>In re Stolrow's, Inc.</u>, 84 B.R. 167, 172 (9th Cir. B.A.P. 1988) (stating that good faith in proposing a plan "also requires a fundamental fairness in dealing with one's creditors"). The Plan thus satisfies the "good faith" requirement of section 1129(a)(3).

### 4.    Section 1129(a)(4) (Disclosure of Payments)

Section 1129(a)(4) of the Bankruptcy Code requires that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4). This statutory provision requires that any and all fees promised or received in connection with or in contemplation of a chapter 11 case by professionals in their representation of the estate of a debtor must be disclosed and subject to the court's review. <u>See</u> <u>In re Chapel Gate Apartments, Ltd.</u>, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (stating that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation"). A plan, however, need not explicitly state that professional fees are subject to a Court's approval. <u>See</u> <u>In re Elsinore</u>

<u>Shore Associates</u>, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that requirements of § 1129(a)(4) were satisfied where plan provided for payment of only "allowed" administrative expenses).

In the instant case, any payments made by the Debtor to professionals for services or for costs and expenses in, or in connection with, this chapter 11 case, have been or will be disclosed to the Bankruptcy Court in applications to employ professionals and in interim applications for compensation of fees and reimbursement of expenses. Moreover, pursuant to Section 2.2(a) of the Plan, any compensation of fees or reimbursement of expenses paid by the Debtor to Professionals pursuant to monthly invoices or interim applications will be subject to final approval by the Bankruptcy Court pursuant to section 330 of the Bankruptcy Code.  Accordingly, the Plan fully complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

### 5. Section 1129(a)(5) (Disclosure of Officers, Directors and Insiders)

Section 1129(a)(5) of the Bankruptcy Code contains three requirements. First, pursuant to section 1129(a)(5)(A)(i), the proponent of a plan must disclose "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director [or] officer . . . or a successor to the debtor under the plan."  11 U.S.C. § 1129(a)(5)(A)(i).  The selection process for the initial Officers and member of the Board of Directors of the Reorganized Debtor is disclosed in the Plan. <u>See</u> Plan §§ 1.69, 6.8(b).

Second, section 1129(a)(5)(A)(ii) requires that the appointment or continuance in office of each director or officer must be "consistent with the interests of creditors and equity security holders and with public policy."   11 U.S.C. § 1129(a)(5)(A)(ii).  The Debtor's selection of its Officers and members of the Board of Directors was in good faith and satisfies this standard.

Third, section 1129(a)(5)(B) requires that the plan proponent disclose "the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." 11 U.S.C. § 1129(a)(5)(B). Section 101(31)(B) of the Bankruptcy Code defines "insider," in the case of a corporation, to include directors, officers, persons in control of the debtor, partnerships in which the debtor is a general partner, general partners of the debtor, or relatives of any of the foregoing. The compensation of any insider of the Debtor shall be disclosed in the Plan Supplement.

### 6.    Section 1129(a)(6) (Rate Changes)

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission with jurisdiction over the rates of the debtor approve any rate changes provided in the Plan. The Debtor is not subject to any such regulations, and the Plan does not provide for any rate changes. Section 1129(a)(6) therefore does not apply in this case.

### 7.    Section 1129(a)(7) (Best Interests of Creditors Test)

The "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code requires each holder of a claim or equity interest in an impaired class to either (a) accept the plan, or (b) receive or retain property that is not worth less, as of the effective date of the plan, than the amount that the holder of the claim or interest would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. See In re Ambanc La Mesa Ltd. Partnership, 115 F.3d 650, 656 (9th Cir. 1997). The "best interests of creditors" test is generally satisfied through a liquidation/recovery analysis. See, e.g., In re Jartran, Inc., 44 B.R. 331, 389-93 (Bankr. N.D. Ill. 1984).

To estimate what members of each Impaired Class of Claims or Equity Interests would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code, this Court must first determine the aggregate dollar amount that would be available

if the Debtor's Chapter 11 Case were converted to a chapter 7 case under the Bankruptcy Code and the Debtor's assets were liquidated by a chapter 7 trustee (the "Liquidation Value"). The Liquidation Value of the Debtor would consist of the net proceeds from the disposition of the Debtor's assets, augmented by any cash held by the Debtor.

The Liquidation Value available to holders of General Unsecured Claims and Equity Interests would be reduced, first, by the claims of secured creditors to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the chapter 7 case and the Chapter 11 Case. Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred in the Chapter 11 Case that are allowed in the chapter 7 case, and litigation costs and claims arising from the operations of the Debtor during the pendency of the chapter 11 cases. The liquidation itself could trigger certain Priority Claims, such as claims for severance pay.

Based on the liquidation analysis set forth on Exhibit G to the Disclosure Statement, holders of Claims will receive a substantially greater value as of the Effective Date under the Plan than such holders would receive under a chapter 7 liquidation. Among other things, (a) holders of HCREIT Claims and Sun Claims would receive significantly less under a chapter 7 liquidation than they are receiving under the Plan, and (b) holders of General Unsecured Clams would receive no recoveries under a chapter 7 liquidation, while such creditors are receiving an estimated distribution of 43.16% on account of their Claims under the Plan.

Moreover, in an actual liquidation of the Debtor, distributions to holders of Claims would be delayed by the chapter 7 process. This delay would materially reduce the amount determined on a present value basis available for distribution to creditors.

The hypothetical chapter 7 liquidation of the Debtor is assumed to commence on December 31, 2010 and to be completed within approximately three months thereafter. The Liquidation Analysis assumed that distributions are made by the chapter 7 trustee beginning approximately five months following commencement of the liquidation and completed within three months thereafter. As a result, the Debtor believes the value of the liquidation distributions on a present value basis determined as of the projected Effective Date would be less than the value distributable under the Plan to each Class of Claims including, but not limited to, all secured Claims.

Based on the foregoing analysis, no dissenting holder of a Claim or Equity Interest in an Impaired Class (if one even exists) will receive less under the Plan than it would receive in a chapter 7 liquidation. The Plan thus satisfies the "best interests of creditors" test under section 1129(a)(7) of the Bankruptcy Code. See Jartran, 44 B.R. at 389-93 (holding that best interests test satisfied by showing that, upon liquidation, the cash received would be insufficient to pay priority claims and secured creditors so that unsecured creditors and stockholders would receive no recovery); Seatco, 257 B.R. at 481 (holding that best interests test satisfied by demonstrating that unsecured priority and general unsecured claims would receive no distributions under chapter 7 and 100% and 35% distributions, respectively, under the plan).

### 8.    Section 1129(a)(8) (Acceptance or Unimpairment)

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims and interests either has accepted the Plan or is not impaired under the Plan. A class of claims or interests accepts a plan if the holders of at least two-thirds of the dollar value and a majority of claims or interests in the class vote to accept, counting only those claimants or interest holders who actually vote. See 11 U.S.C. § 1126(c).

Here, Class 1 is Unimpaired under the Plan and, therefore, is deemed to have accepted the Plan. See 11 U.S.C. § 1126(f). As set forth in the Hall Declaration,

Classes 2, 3, 4 and 6 have voted to accept the Plan within the meaning of Section 1126(c) of the Bankruptcy Code. However, Class 5 did not vote to accept the Plan because no creditor in that Class returned a ballot. In addition, because the Plan provides that the holders of Subordinated Claims in Class 7 and Equity Interests in Class 8 will not receive or retain any property on account of such Claims or Equity Interests, Classes 7 and 8 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. See 11 U.S.C. § 1126(g).

Because the Plan does not satisfy the acceptance requirements of section 1129(a)(8), it must be confirmed under the "cram down" provision of section 1129(b), which requires that a plan not "discriminate unfairly" and be "fair and equitable" with respect to rejecting classes. The Plan satisfies section 1129(b), as demonstrated in Section IV.B below.

### 9.    Section 1129(a)(9) (Administrative and Priority Claims)

Section 1129(a)(9) of the Bankruptcy Code contains the requirements in a plan for paying claims under § 507(a) of the Bankruptcy Code. The Plan satisfies the requirements of section 1129(a)(9).

First, the Plan provides for payment in full on the Effective Date, or as soon thereafter as is practicable, of (a) all Allowed Administrative Expense Claims (i.e., Claims entitled to administrative priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code), and (b) all Allowed Priority Claims (i.e., all other Claims entitled to priority under section 507(a) other than Priority Tax Claims under section 507(a)(8)). See Plan §§ 2.1, 5.1. The Plan therefore satisfies sections 1129(a)(9)(A)-(B) of the Bankruptcy Code. See 11 U.S.C. § 1129(a)(9)(A)-(B).

Second, the Plan provides that holders of Allowed Priority Tax Claims will receive payment in full on account of such Claims in "quarterly cash payments beginning on the final day of the first full quarter after the Effective Date and ending five years after

the Petition Date." <u>See</u> Plan § 2.3. The Plan therefore satisfies section 1129(a)(9)(C) of the Bankruptcy Code. <u>See</u> 11 U.S.C. § 1129(a)(9)(C) (requiring payment in full of claims under § 507(a)(8) through "regular installment payments in cash over a period ending not later than 5 years after the date of the order for relief . . . .")

       <u>Third</u>, the Plan provides that holders of Secured Tax Claims[6] shall retain their Liens and receive the same treatment under the Plan as holders of Allowed Priority Tax Claims (i.e., payment in full through quarterly cash payments ending five years after the Petition Date). <u>See</u> Plan § 5.4. The Plan therefore satisfies section 1129(a)(9)(D) of the Bankruptcy Code. <u>See</u> 11 U.S.C. § 1129(a)(9)(D).

**10.  Section 1129(a)(10) (Acceptance by One Impaired Class)**

       Section 1129(a)(10) of the Bankruptcy Code requires that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). The Debtor has satisfied this requirement. As indicated in the Hall Declaration, Classes 2, 3, 4 and 6 voted to accept the Plan, not counting the votes of any insiders.

**11.  Section 1129(a)(11) (Feasibility)**

       Under the feasibility requirement in section 1129(a)(11) of the Bankruptcy Code, confirmation of a plan must not be likely to be followed by the liquidation of the debtor or the need for further financial reorganization, unless such liquidation or reorganization is proposed in the plan. To demonstrate that a plan is feasible, it is not necessary for a debtor to guarantee success. Rather, only a "reasonable probability" that the provisions of a plan can be performed is required. <u>See</u> <u>In re Acequia, Inc.</u>, 787 F.2d

---

[6] A Secured Tax Claim is a Claim that would otherwise meet the description of an unsecured Claim of a governmental unit under § 507(a)(8) of the Bankruptcy Code but is secured by a Lien on property in which the Estate has an interest, to the extent of the value of the Claimant's interest in the Estate's interest in such property. <u>See</u> Plan § 1.94.

1352, 1364 (9th Cir. 1986); see also In re Danny Thomas II Ltd. P'ship, 241 F.3d 959, 963 (8th Cir. 2001) ("While a reorganization plan's 'success need not be guaranteed,' the bankruptcy court cannot approve a plan unless it has a least a reasonable prospect for success.") (internal citations omitted); In re Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988) (holding that a plan may be feasible although its success is not guaranteed); In re Rivers End Apartments, Ltd., 167 B.R. 470, 476 (Bankr. S.D. Ohio 1994) (holding that to establish feasibility, a plan proponent must demonstrate that its plan offers "a reasonable prospect of success" and its workable).

Here, the Debtor has demonstrated its ability to meet its obligations under the Plan with respect to future operations.  The projections provided by the Debtor as Exhibit F to the Disclosure Statement – as further provided in the Tyrrell Declaration – indicate that the Reorganized Debtor will be a financially viable entity in the future.  The projections provide that, after giving effect to Confirmation and the consummation of the transactions contemplated by the Plan, and subject to the limitations and assumptions described in the Disclosure Statement, the Reorganized Debtor will have sufficient cash to meet its future financial obligations during the projection period and thereafter, including by paying cash interest and scheduled amortization on its outstanding indebtedness.

The projections therefore demonstrate that:  (a) the Plan provides a feasible means of completing a reorganization of the Debtor's business; and (b) subject to the risks described in the Disclosure Statement, there is a reasonable prospect that Confirmation of the Plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the Debtor.  Accordingly, the Plan satisfies the feasibility standard of section 1129(a)(9) of the Bankruptcy Code.

### 12.    Section 1129(a)(12) (Section 1930 Fees)

Section 1129(a)(12) of the Bankruptcy Code requires a plan to provide that all fees payable under 28 U.S.C. § 1930 (consisting primarily of the quarterly fee to the United States Trustee) will be paid on the effective date of the plan.  Section 6.14 of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930 on the Effective Date and until the liability for paying such fees ends under 28 U.S.C. § 1930(a)(6).  The Plan therefore complies with section 1129(a)(12) of the Bankruptcy Code.

### 13.    Section 1129(a)(13) (Retiree Benefits)

Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continued payment of certain retiree benefits "for the duration of the period the debtor has obligated itself to provide such benefits."  11 U.S.C. § 1129(a)(13).  Pursuant to Section 6.18 of the Plan, from and after the Effective Date, the Reorganized Debtor will be obligated to pay retiree benefits (as defined in § 1114(a) of the Bankruptcy Code), if any, in accordance with the terms of any retiree benefit plans or other agreements governing the payment of such benefits, subject to any rights to amend, modify or terminate such benefits under the terms of the applicable retiree benefits plan, other agreement or applicable non-bankruptcy law.  The Plan therefore satisfies section 1129(a)(13) of the Bankruptcy Code.[7]

### 14.    Section 1129(a)(14) (Domestic Support Obligations)

The Plan satisfies section 1129(a)(14) of the Bankruptcy Code, as the Debtor is not required to pay any domestic support obligations.

### 15.    Section 1129(a)(15) (Individual Debtor Requirements)

The Plan satisfies section 1129(a)(15) of the Bankruptcy Code, as the Debtor is not an individual debtor.

---

[7] As discussed below, the Debtor added Section 6.18 as part of its non-material amendments to the Plan.

### 16.    Section 1129(a)(16) (Transfers Under Plan)

Section 1129(a)(16) of the Bankruptcy Code requires that any transfers of property under a plan be made in accordance with applicable non-bankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business or commercial corporation or trust.  The Plan satisfies section 1129(a)(16), as all transfers under the Plan will comply with applicable non-bankruptcy law.

### 17.    Summary of Compliance With Section 1129(a)

In sum, with the exception of section 1129(a)(8), the Plan satisfies each of the requirements contained in section 1129(a).  Moreover, because the Plan does not discriminate unfairly and is fair and equitable with respect to the non-accepting Impaired Classes (Classes 5, 7 and 8), as demonstrated below, this Court should confirm the Plan under section 1129(b) despite the non-acceptances of Classes 5, 7 and 8.

### B.    The Plan Meets the Requirements Set Forth in Section 1129(b) of the Bankruptcy Code

Section 1129(b)(1) of the Bankruptcy Code, which governs the confirmation of a plan notwithstanding the non-acceptance by one or more impaired classes, provides that:

> [I]f all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1).  Section 1129(b)(1) thus requires that the plan proponent "request" confirmation and that the plan "not discriminate unfairly" and be "fair and equitable" with respect to each rejecting impaired class.

The Debtor has requested confirmation over the non-acceptance of the Plan by Classes 5, 7 and 8.  The requirements that the Plan not discriminate unfairly and be fair and equitable with respect to Classes 5, 7 and 8 are considered separately below.

### 1.    Unfair Discrimination

The section 1129(b)(1) requirement that a plan not "discriminate unfairly" against an impaired dissenting class focuses on the treatment of the dissenting class relative to other classes consisting of similar legal rights.  See H.R. Rep. No. 95-595, at 416, reprinted in 1978 U.S.C.C.A.N. at 6372 ("The plan may be confirmed . . . if the class is not unfairly discriminated against with respect to equal classes and if junior classes will receive nothing under the plan.").  To prove unfair discrimination, a dissident creditor or interest holder must demonstrate that it has been "the direct object of unfair treatment."  Corestates Bank, N.A. v. United Chemical Technologies, Inc., 202 B.R. 33, 47-48 (E.D. Pa. 1996) ("A plan that [discriminates] unfairly gives unequal treatment to creditors who are similarly situated regarding legal rights and priority.") (citation omitted).

The Plan does not "discriminate unfairly" against Classes 5, 7 and 8.  First, Class 5 consists of Other Secured Claims, which are secured claims under section 506(a) of the Bankruptcy Code other than the separately classified HCREIT Claims, Sun Claims and Secured Tax Claims.  See Plan § 1.71.  The Plan treats holders of Claims in Class 5 similar to the other Classes of secured claims under the Plan in that holders of Claims in Class 5 are paid the value of their Secured Claims in quarterly installment payments over a seven year period following the Effective Date.  The Plan therefore does not "discriminate unfairly" against Class 5.

Second, the Plan does not "discriminate unfairly" against either Class 7 or Class 8.  Class 7 consists of Subordinated Claims under section 510 of the Bankruptcy Code or other applicable law and Class 8 consists of Equity Interests.  For both of these

Classes, there is no other Class of equal rank under the Plan.  See <u>Matter of Kennedy</u>, 158 B.R. 589, 599 (Bankr. D.N.J. 1993) ("To avoid unfair discrimination, a plan must treat similarly situated creditors equally.").    Accordingly, the Plan satisfies the "unfair discrimination" standard of section 1129(b).

### 2.    Fair and Equitable

The Plan is also "fair and equitable" with respect to non-accepting Classes.  Under section 1129(b)(2)(A)(i) of the Bankruptcy Code, a Plan is "fair and equitable" with respect to a non-accepting class of secured claims if (a) the secured class retains its liens, and (b) the holder of each claim in the class receives "deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property."  <u>See</u> 11 U.S.C. § 1129(b)(2)(A)(i); <u>In re North Valley Mall</u>, 432 B.R. 825, 830 (Bankr. C.D. Cal. 2010).

Section 5.5 of the Plan provides that holders of Other Secured Claims (a) retain their Liens, and (b) receive deferred cash payments totaling the Allowed amount of their Other Secured Claim over seven years following the Effective Date.   The Plan therefore satisfies section 1129(b)(2)(A)(i) with respect to Class 5.

In addition, under section 1129(b)(2)(B) and (C) of the Bankruptcy Code, a plan is "fair and equitable" with respect to a dissenting class of unsecured claims or equity interests when such claims or equity interests are either paid the value of their interests or an equivalent, or when no class junior to the dissenting class of unsecured claims or equity interests receives or retains any property under the plan.  <u>See</u> 11 U.S.C. § 1129(b)(2)(B)-(C); <u>In re Union Meeting Partners</u>, 165 B.R. 553, 569 (Bankr. E.D. Pa. 1994) (stating that a plan is not fair and equitable if it violates the "absolute priority rule").

1

2

3

Here, because there are no Classes junior to Classes 7 or 8 that will receive or retain any property under the Plan, the Plan satisfies the "fair and equitable" standard under sections 1129(b)(2)(B) and (C).

4

5

6

7

The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to non-accepting Classes 5, 7 and 8.  Accordingly, pursuant to section 1129(b) of the Bankruptcy Code, this Court should confirm the Plan notwithstanding the non-acceptance of the Plan by Classes 5, 7 and 8.

8

**C.     Section 1129(d) (Avoidance of Taxes)**

9

10

11

12

13

14

Section 1129(d) of the Bankruptcy Code provides that "on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of . . . Section 5 of the Securities Act of 1933."  11 U.S.C. § 1129(d).  Here, the "principal purpose" of the Plan is to reorganize the Debtor's estate for the benefit of the Debtor's secured creditors, unsecured creditors and other stakeholders.  The Plan does not violate section 1129(d).

15

**V.     THE SETTLEMENTS AND RELEASES IN THE PLAN ARE PROPER**

16

17

18

19

20

The Plan incorporates a number of settlements and/or releases between or among, as applicable, the Debtor, HCREIT, Sun, the Committee, the Envision Entities, Serra and other parties.  Pursuant to Bankruptcy Rule 9019(a) and section 1123(b)(3)(A) of the Bankruptcy Code, this Court has the authority to approve a compromise or settlement under a Plan.

21

22

23

24

25

26

In evaluating any compromise, the key issues are whether the proposed compromise is "fair and equitable" and in the "best interests of the estate."  In re A & C Properties, 784 F.2d 1377, 1381-82 (9th Cir. 1986).  This Court has wide latitude and discretion in evaluating a proposed compromise because the judge is "uniquely situated to consider the equities and reasonableness."  In re Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1982).  Accordingly, this Court need only "canvass the issues and

27

28

see whether the settlement 'falls below the lowest point in the range of reasonableness.'"
In re Carla Leather, Inc., 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984) (quoting In re W. T.
Grant & Co., 699 F.2d 599, 608 (2d Cir. 1983), aff'd, 50 B.R. 764 (S.D.N.Y. 1985)).
This analysis also applies to any non-debtor releases in a plan of reorganization.  See
Fogel v. Zell, 221 F.3d 955, 966-67 (7th Cir. 2000).

       The various settlements and accompanying releases embodied in the Plan
plainly meet the standard set forth above, are a fair and reasonable resolution of the issues
and claims addressed therein and are in the best interests of the Debtor's Estate and its
creditors.  The Plan itself, which embodies the various settlements between and among
the parties, is the product of extensive, arms' length negotiations among the Debtors,
HCREIT, Sun, the Committee, Serra, the Envision Entities and the Debtor's unions and
employees.  The fairness and reasonableness of those settlements are directly supported
by the Mousa Declaration.  Moreover, the appropriateness of those settlements is further
reflected by (a) the lack of objections by any creditor or party-in-interest to the Plan or
the settlements contained therein, and (b) the acceptance of the Plan by each creditor
voting on the Plan, as set forth in the Hall Declaration.

## VI.    PROPOSED AMENDMENTS TO THE PLAN

       The Debtor has made certain non-material amendments to the Plan in order
to address comments by third parties and clarify certain issues (the "Non-Material
Amendments").  The Non-Material Amendments are reflected in redline in the copy of
the Plan attached hereto as Exhibit D.  The Debtor summarizes the Non-Material
Amendments as follows:

- Envision Amendments – Per the request of the chapter 7 trustee of
Envision Hospital Corp., the Debtor amended Sections 13.4 and 13.5 of
the Plan to provide that the Envision Entities are not releasing claims
against non-debtors and those same non-debtors are not releasing claims
against the Envision Entities.  See Plan §§ 13.4, 13.5.

- <u>Executory Contracts and Unexpired Leases</u> – The Debtor has amended Section 9.1 of the Plan to extend the deadline to file a motion to assume its Executory Contracts and Unexpired Leases to "the later of (x) the Effective Date, or (y) January 31, 2011." <u>See</u> Plan § 9.1.

- <u>Plan Supplement</u> – The Debtor's Plan Supplement will now be filed on or before the Effective Date to, among other things, allow the parties to finalize loan documents. <u>See</u> Plan § 1.77.

- <u>Clarifying Comments to Ensure Compliance with Section 1129(a)</u> – The Debtor has made certain clarifying amendments to ensure compliance with section 1129 of the Bankruptcy Code: (i) adding Section 6.18 to the Plan on retiree benefits; (ii) including detail in Section 6.8(b) of the Plan on the Reorganized Debtor's selection process for its Officers and Board of Directors; and (iii) clarifying the treatment of holders of Other Secured Claims in Section 5.5 of the Plan. <u>See</u> Plan §§ 1.69, 5.5, 6.8(b), 6.18.

A few additional clarifying amendments are also set forth in redline in the Plan. The Debtor submits that these amendments are non-material amendments to the Plan pursuant to section 1127 of the Bankruptcy Code. The Debtor therefore requests that this Court approve the Non-Material Amendments as part of an order confirming the Plan.

## VII.    <u>CONCLUSION</u>

For the reasons stated above and based on the evidence presented herein and at the Confirmation Hearing, the Debtor submits that the Plan has satisfied all of the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and should be confirmed. The Debtor therefore respectfully request that the Court enter an order, in the form attached hereto as <u>Exhibit E</u>, confirming the Plan.

DATE:  DECEMBER 14, 2010

RESPECTFULLY SUBMITTED,


FOLEY & LARDNER LLP
EDWARD J. GREEN (ADMITTED PRO HAC VICE)
GEOFFREY S. GOODMAN (ADMITTED PRO HAC VICE)

DAVID GOULD, A PROFESSIONAL CORPORATION
DAVID GOULD

BY: */s/ GEOFFREY S. GOODMAN*
ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION