Edward J. Green (IL BAR NO. 6225069) (*PRO HAC VICE*)
Geoffrey S. Goodman (IL BAR NO. 6272297) (*PRO HAC VICE*)
Foley & Lardner LLP
321 N. Clark Street, Suite 2800
Chicago, IL  60654-5313
Telephone:  312.832.4500
Facsimile:  312.832.4700
Email:  egreen@foley.com
Email:  ggoodman@foley.com

DAVID GOULD (CA Bar No. 37947)
DAVID GOULD, A PROFESSIONAL CORPORATION
23975 Park Sorrento, Suite 200
Calabasas, CA 91302-4001
Telephone: 818.222.8092
Facsimile: 818.449.4803
Email:  dgould@davidgouldlaw.com

Attorneys for Debtor and
Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

IN RE:

PACIFICA OF THE VALLEY CORPORATION,[1]

    DEBTOR.

CASE NO.  1:09-bk-11678-MT

CHAPTER 11

**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION, AS MODIFIED**

---

[1] The Debtor in this proceeding is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (Tax ID No. 33-0737312), with a mailing address of 9449 San Fernando Rd., Sun Valley, CA 91352-1421.

**INTRODUCTION**

Pacifica of the Valley Corporation (the "Debtor") proposes the following second amended plan of reorganization, as modified (the "Plan") for the resolution of the outstanding claims against and equity interests in the Debtor.  The Debtor is the proponent of the Plan within the meaning of § 1129 of the Bankruptcy Code, 11 U.S.C. § 1129.  Reference is made to the Debtor's disclosure statement, distributed contemporaneously with the Plan (the "Disclosure Statement"), for a discussion of the Debtor's history, business, results of operations, and for a summary and analysis of the Plan.  There also are other agreements and documents, which will be filed with the Bankruptcy Court, that are referenced in the Plan or the Disclosure Statement and that will be available for review.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION**
**AND COMPUTATION OF TIME**

**A.**    **Scope of Definitions**

Unless otherwise stated, all terms not defined herein shall have the meaning set forth in the Bankruptcy Code and the Bankruptcy Rules.  Where there is a conflict between the defined terms herein and any terms in the Bankruptcy Code or the Bankruptcy Rules, the definitions herein shall control.  The following terms when used in the Plan shall have the meanings set forth in this Article.

**B.**    **Definitions**

**1.1**    **"Administrative Expense Claim"** shall mean a Claim for costs and expenses of administration allowed under §§ 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under §§ 328(a), 330(a), 331 or 333 of the Bankruptcy Code, including Fee Claims; (c) Claims for reclamation allowed in accordance with § 546(c) of the Bankruptcy Code; and (d) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

**1.2**    **"Allowed Claim"** shall mean:

a.    A Claim that (i) has been listed by the Debtor in its Schedules as other than disputed, contingent or unliquidated; and (ii) is not otherwise a Disputed Claim;

b.    A Claim (i) for which a Proof of Claim or request for payment of Administrative Expense Claim has been filed by the applicable Bar Date or otherwise been deemed timely filed under applicable law; and (ii) that is not otherwise a Disputed Claim; or

2

    c.     A Claim that is allowed: (i) in any Stipulation of Amount and Nature of Claim executed by the Reorganized Debtor and the Claimant on or after the Effective Date; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) pursuant to a Final Order; or (iv) pursuant to the terms of the Plan.

**1.3** **"Allowed Envision Claim"** shall have the meaning ascribed thereto in Section 13.5 of the Plan.

**1.4** "**Amended Certificate of Incorporation and Bylaws**" means the respective amended and restated certificate of incorporation and amended and restated bylaws of the Reorganized Debtor, in substantially the form to be included in the Plan Supplement.

**1.5** **"Assigned Causes of Action"** shall mean (a) all Avoidance Actions, and (b) all Workers' Compensation Insurance Causes of Action.

**1.6** **"Avoidance Actions"** shall mean Causes of Action held by the Debtor and/or the Estate under §§ 544, 547, 548, 549, 550 or 551 of the Bankruptcy Code.

**1.7** **"Ballot"** shall mean the form or forms distributed to each holder of an Impaired Claim entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

**1.8** **"Bankruptcy Code"** shall mean Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect at the relevant time.

**1.9** **"Bankruptcy Court"** shall mean the United States Bankruptcy Court, Central District of California, or any such Court having jurisdiction over the Chapter 11 Case.

**1.10** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as may be amended and as supplemented by any local bankruptcy rules adopted by the Bankruptcy Court.

**1.11** **"Bar Date"** shall mean the applicable bar date by which a Proof of Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including the Bar Date Order and the Confirmation Order.

**1.12** **"Bar Date Order"** shall mean an order of the Bankruptcy Court establishing Bar Dates for Filing Proofs of Claims in the Chapter 11 Case, as the same may be amended, modified or supplemented.

**1.13** **"Board of Directors"** shall mean that body vested with and having the powers and duties of governing the Reorganized Debtor.

**1.14** **"Business Day"** shall mean any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.15** **"Cash"** shall mean legal tender of the United States of America and equivalents thereof.

**1.16** **"Causes of Action"** shall mean any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims held by the Debtor or the Estate, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise.

**1.17** **"Chapter 11 Case"** shall mean the above-captioned case commenced under Chapter 11 of the Bankruptcy Code by the Debtor.

**1.18** **"Claim"** shall mean a "claim," as defined in § 101(5) of the Bankruptcy Code, against the Debtor.

**1.19** **"Claimant"** shall mean the holder of a Claim.

**1.20** **"Class"** shall mean a class of Claims or Equity Interests as that term is used in the § 1122 of the Bankruptcy Code.

**1.21** **"Class 6 Creditor Trust"** shall mean the trust established on the Effective Date pursuant to Section 6.17 of the Plan and the Class 6 Creditor Trust Agreement.

**1.22** **"Class 6 Creditor Trustees"** shall mean the trustees of the Class 6 Creditor Trust appointed pursuant to the Class 6 Creditor Trust Agreement.

**1.23** **"Class 6 Creditor Trust Agreement"** shall mean the trust agreement establishing the Class 6 Creditor Trust, in substantially the form included in the Plan Supplement, which shall be executed by the Debtor and the Class 6 Creditor Trustees on the Effective Date pursuant to the terms of the Plan.

**1.24** **"Class 6 Creditor Trust Assets"** shall mean (a) the General Unsecured Promissory Note and the proceeds thereof, and (b) any proceeds of Assigned Causes of Action turned over by Sun to the Class 6 Creditor Trust pursuant to Section 5.3(c) of the Plan.

**1.25** **"Collective Bargaining Agreements"** shall mean the Debtor's collective bargaining agreements effective in June 2007 and on June 1, 2010 with SEIU United Healthcare Workers West and Service Employees International Union Local 121 RN.

**1.26** **"Committee"** shall mean the statutory official committee of unsecured creditors in the Chapter 11 Case appointed pursuant to § 1102 of the Bankruptcy Code, as such Committee may be reconstituted from time to time.

**1.27** **"Confirmation Date"** shall mean the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.28** **"Confirmation Hearing"** shall mean the hearing before the Bankruptcy Court, held under § 1128 of the Bankruptcy Code, to consider confirmation of this Plan and related matters, as such hearing may be adjourned or continued from time to time.

**1.29** **"Confirmation Order"** shall mean the order entered by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**1.30** **"Debtor"** shall mean the above-captioned debtor and debtor-in-possession identified on the cover page to this Plan.

**1.31** **"Disallowed Claim"** shall mean a Claim or any portion thereof, that (a) has been disallowed by a Final Order, (b) is scheduled at zero or as contingent, disputed or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, or (c) is not listed on the Schedules and as to which a Bar Date has been set but no Proof of Claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court.

**1.32** **"Disbursing Agent"** shall mean the Reorganized Debtor, or any Person designated by the Reorganized Debtor to serve as disbursing agent under this Plan.

**1.33** **"Disclosure Statement"** shall mean the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan and has been prepared and distributed by the Debtor, as the same may be amended, modified or supplemented.

**1.34** **"Disproportionate Share Hospital Payment"** shall mean the special funding provided by the state and federal government to hospitals, such as the Debtor, who treat significant populations of indigent patients through Disproportionate Share Hospital programs.

**1.35** **"Disputed Claim"** shall mean a Claim or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim and includes, without limitation, Claims that (a) (i) have not been listed on the Schedules by the Debtor or have been scheduled at zero or as unknown, contingent, unliquidated or disputed, and (ii) are not the subject of an objection filed in the Bankruptcy Court but as to which the time for filing an objection has not yet expired, (b) that are the subject of a Proof of Claim that differs in nature, amount or priority from the Schedules, or (c) are the subject of an objection filed with the Bankruptcy Court, which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

**1.36** **"Disputed Claims Reserve"** shall have the meaning ascribed thereto in Section 8.3 of the Plan.

**1.37** **"Distribution Date"** shall mean an Initial Distribution Date, a Subsequent Distribution Date or a Final Distribution Date.

**1.38** **"Effective Date"** shall mean the means the Business Day on which all conditions set forth in Article X of this Plan have been either satisfied or waived as provided in section 10.2 of this Plan.

5

**1.39** **"Employees"** shall mean individuals employed by the Debtor as of the Confirmation Date.

**1.40** **"Envision Claim"** shall mean the $14.7 million Claim asserted by the Envision Entities against the Estate.

**1.41** **"Envision Entities"** shall mean Envision Hospital Corporation and anyone claiming by or through Envision Hospital Corporation including, but not limited to, the chapter 7 trustee or bankruptcy estate of Envision Hospital Corporation.

**1.42** **"Equity Interest"** shall mean (a) any share of stock or other ownership interest in the Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest, and (b) any Claim that is recharacterized as an Equity Interest by a Final Order.

**1.43** **"Estate"** shall mean the estate created for the Debtor in the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code.

**1.44** **"Executory Contract" or "Unexpired Lease"** shall mean a contract or lease to which the Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

**1.45** **"Factoring Order"** shall mean the Final Order: (1) Approving Post-Petition Factoring Agreement: (2) Authorizing Use of Cash Collateral and Granting Adequate Protection; (3) Granting Security Interests and Super-Priority Administrative Expense Treatment; and (4) Approving Sun Capital Healthcare, Inc.'s Fees and Costs, entered by the Bankruptcy Court on March 26, 2009, as it has been amended or modified.

**1.46** **"Fee Claim"** shall mean a Claim under §§ 328, 330(a), 331, 333, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Case.

**1.47** **"Final Distribution Date"** shall have the meaning ascribed thereto in Section 7.5 of the Plan.

**1.48** **"Final Order"** shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely filed, or as to which any appeal that has been filed or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules

6

or other rules governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

1.49 **"General Unsecured Claim"** shall mean any Claim that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, HCREIT Claim, Sun Claim, Secured Tax Claim, Other Secured Claim or Subordinated Claim.

1.50 **"General Unsecured Promissory Note"** shall mean the unsecured promissory note, in substantially the form included in the Plan Supplement, executed by the Reorganized Debtor and delivered to the Class 6 Creditor Trustees on the Effective Date for the benefit of holders of Allowed General Unsecured Claims (a) in the principal amount of $4,575,000, (b) bearing regular interest from the Effective Date at 8% per annum, (c) with default interest, payable only in the event of a payment default under the General Unsecured Promissory Note, at 12% per annum, (d) only accruing interest until the Sun and Unsecured Notes Payment Date, (e) fully amortized by equal monthly payments of principal and interest beginning on the Sun and Unsecured Notes Payment Date, and (f) maturing on the date that is seven years after the Effective Date.

1.51 **"Guarantees"** shall mean Paul R. Tuft's guarantees of the HCREIT Promissory Note, the Sun Term Loan, the Sun Promissory Note and the General Unsecured Promissory Note.

1.52 **"HCREIT"** shall mean Health Care REIT, Inc.

1.53 **"HCREIT 2011 Payments"** shall mean (a) a principal payment on account of the HCREIT Promissory Note in the amount of $378,000, payable once the State of California pays the January 2011 quality assurance fee to the Debtor (currently scheduled for the week of January 31, 2011), and (b) a principal payment on account of the HCREIT Promissory Note in the amount of $378,000, payable once the State of California pays the February 2011 quality assurance fee to the Debtor (currently scheduled for the week of February 28, 2011).

1.54 **"HCREIT Cash Payment"** shall mean the Debtor's Cash payment to HCREIT on the Effective Date in the approximate amount of $3,800,000, which amount shall consist of the amounts required to pay in full the HCREIT Effective Date Paydown and the HCREIT Fee Satisfaction (as adjusted, if necessary, in accordance with Section 1.57 below).

1.55 **"HCREIT Claims"** shall mean the Claims of HCREIT.

1.56 **"HCREIT Effective Date Paydown"** shall mean that portion of the HCREIT Cash Payment, in the amount of $2,644,000, which shall be applied toward the principal amount of the HCREIT Promissory Note.

1.57 **"HCREIT Fee Satisfaction"** shall mean that portion of the HCREIT Cash Payment required to fully satisfy any HCREIT Claim for legal fees and unpaid adequate protection payments related to the Debtor or the Chapter 11 Case as of the Effective Date, which amount is estimated to be $1,156,000, subject to final adjustment to reflect the actual amount of HCREIT's claims for legal fees and adequate protection payments as of the Effective Date.

**1.58** **"HCREIT Promissory Note"** shall mean the promissory note, in substantially the form included in the Plan Supplement, executed by the Reorganized Debtor and delivered to HCREIT on the Effective Date on account of the HCREIT Claims (a) in a principal amount equal to approximately $8,044,804.17, based on an estimated Effective Date of January 1, 2011, (b) bearing regular interest from the Effective Date at 9.63% per annum in year one, escalating 0.50% each year thereafter, up to a maximum of 10.63%, (c) with default interest, payable only in the event of a payment default under the HCREIT Promissory Note, at 4.00% above the applicable regular interest rate, (d) providing for monthly payments of interest in arrears, (e) providing for the HCREIT Effective Date Paydown and the HCREIT 2011 Payments, (f) other than the HCREIT Effective Date Paydown and the HCREIT 2011 Payments, providing for equal monthly principal payments beginning one year after the Effective Date sufficient to fully amortize the HCREIT Promissory Note by the date that is thirty-six (36) months after the Effective Date, and (g) maturing on the date that is thirty-six (36) months after the Effective Date.

**1.59** **"HCREIT Regular Payment Completion Date"** shall mean the date on which an amount equal to all of the following has been paid in full:  (a) the HCREIT Fee Satisfaction; (b) all principal under the HCREIT Promissory Note; (c) all non-default interest under the HCREIT Promissory Note; and (d) all ordinary non-default fees (other than late fees), costs and charges under the HCREIT Promissory Note.

**1.60** **"Hospital"** shall mean the general acute care hospital owned and operated by the Debtor in Sun Valley, California.

**1.61** **"Impaired"** shall mean when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is "impaired" within the meaning of § 1124 of the Bankruptcy Code.

**1.62** **"Initial Distribution Date"** shall have the meaning ascribed thereto in Section 7.3 of the Plan.

**1.63** "**Intercreditor Agreement**" shall mean an intercreditor agreement between HCREIT and Sun, setting forth additional terms governing such parties' exercise of their respective rights and remedies with respect to the Reorganized Debtor and each other and such other provisions as the parties may agree upon, in form and substance acceptable to both HCREIT and Sun and which may be amended by the parties thereto without amending the Plan.

**1.64** **"Lien"** or **"Liens"** shall mean a lien, security interest or charge against or interest in property of the Debtor to secure payment of a debt or performance of an obligation owed by the Debtor.

**1.65** **"Liquidity Portion"** shall have the meaning ascribed to it in Section 6.7(a)(ii) of the Plan.

**1.66** **"Long Term Portion"** shall have the meaning ascribed to it in Section 6.7(a)(i) of the Plan.

8

**1.67** **"Net Proceeds of Assigned Causes of Action"** shall mean the actual cash proceeds of the Assigned Causes of Action, less all expenses incurred by Sun or its designee, or the Reorganized Debtor, as the case may be, in generating such proceeds, including all fees and expenses of attorneys, accountants, consultants and expert witnesses and court costs.

**1.68** **"New Stock"** shall mean the shares of common stock of the Reorganized Debtor to be issued on the Effective Date in accordance with Article VI of this Plan.

**1.69** **"Officers"** shall mean those persons chosen by the Board of Directors as the officers who shall perform the executive duties of the Reorganized Debtor.

**1.70** **"Organizational Documents"** shall mean the bylaws, articles of incorporation, corporate charters, certificates of formation, limited liability agreements or other documents or agreements that govern or affect the corporate formation and governance of the Debtor and the Reorganized Debtor.

**1.71** **"Other Secured Claim"** shall mean a Claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the Claimant's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to §§ 506(a) and, if applicable, 1129(b) of the Bankruptcy Code, other than a HCREIT Claim, a Sun Claim or a Secured Tax Claim.

**1.72** **"Ordinary Course Administrative Expense Claims"** shall mean Administrative Expense Claims incurred in the ordinary course of the Debtor's business, including the Administrative Expense Claims of trade vendors and suppliers of the Debtor.

**1.73** **"Person"** shall mean an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in § 101(27) of the Bankruptcy Code), or other entity.

**1.74** **"Petition"** shall mean the voluntary petition for relief filed by the Debtor with the Bankruptcy Court on February 17, 2009 under Chapter 11 of the Bankruptcy Code, and any amendments or modifications thereto.

**1.75** **"Petition Date"** shall mean the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

**1.76** **"Plan"** shall mean this second amended Chapter 11 plan of reorganization for the Debtor, either in its present form or as it may be altered, amended, or modified, including all Exhibits thereto.

**1.77** **"Plan Supplement"** shall mean the supplement to this Plan filed by the Debtor with the Bankruptcy Court on or before the Effective Date.

**1.78** **"Post-Petition PTO"** shall mean paid time off, vacation days, sick days, holiday days, bereavement days, and jury duty days accruing for Employees after the Petition Date.

9

**1.79** **"Pre-Petition PTO"** shall mean paid time off, vacation days, sick days, holiday days, bereavement days, and jury duty days accruing for Employees before the Petition Date.

**1.80** **"Priority Claim"** shall mean a Claim that is entitled to priority in payment pursuant to § 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

**1.81** **"Priority Tax Claim"** shall mean a Claim that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.

**1.82** **"Professional"** shall mean any professional employed in the Chapter 11 Case pursuant to §§ 327, 328, 333 or 1103 of the Bankruptcy Code or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to § 503(b)(4) of the Bankruptcy Code.

**1.83** **"Proof of Claim"** shall mean Official Form 10 as is used in the Bankruptcy Court as evidence of a Claim, properly filled-out, executed with supporting documentation, and filed with the Bankruptcy Court before any applicable Bar Date.

**1.84** **"Property**" means all assets or property of the Estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action (whether direct or derivative), previously or now owned by the Debtor or the Reorganized Debtor, as the case may be, or acquired by the Estate, as defined in § 541 of the Bankruptcy Code.

**1.85** **"Pro Rata"** shall mean when used with reference to a distribution to holders of Allowed Claims in a particular Class or other specified group of Claims pursuant to Article V of the Plan, proportionately so that with respect to a particular Allowed Claim in such Class, the ratio of (a)(i) the amount of Cash distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the amount of Cash distributed on account of all Allowed Claims in such Class or group of Claims to (ii) the amount of all Allowed Claims in such Class or group of Claims.

**1.86** **"Real Estate"** shall mean the real property owned by the Debtor commonly known as 9449 San Fernando Road, Sun Valley, California 91352-1421.

**1.87** **"Real Estate Collateral"** shall mean (a) the Real Estate, (b) all buildings and any other improvements now or hereafter erected or placed upon the Real Estate, (c) all fixtures of every kind and nature whatsoever now or hereafter affixed to the Real Estate, (d) all equipment located in or on, or used or usable in connection with, the Real Estate or any improvements or fixtures located thereon, and (e) all rents, income, issues, profits, royalties and other benefits derived or to be derived from the Real Estate or any related improvements or fixtures, and all of the Debtor's interest in any lease, license or other agreement pursuant to which any such rents are payable.

**1.88** **"Recapitalization Agreement"** shall mean the Recapitalization Agreement between the Reorganized Debtor and Tuft, substantially in the form attached as <u>Exhibit C</u> to the Disclosure Statement, together with any of the documents and instruments relating thereto,

setting the terms of the issuance of the New Stock to Tuft on the Effective Date of the Plan and simultaneously with the vesting of assets in the Reorganized Debtor.

**1.89  "Reinstated" or "Reinstatement"** shall mean rendering a Claim Unimpaired within the meaning of § 1124 of the Bankruptcy Code.  Unless the Plan specifies a particular method of Reinstatement, when the Plan provides that an Allowed Claim will be Reinstated, such Claim will be Reinstated, at the Reorganized Debtor's sole discretion, in accordance with one of the following:

a.    The legal, equitable and contractual rights to which such Claim entitles the holder will be unaltered; or

b.    Notwithstanding any contractual provisions or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:

i.    any such default that occurred before or after the commencement of the Chapter 11 Case, other than a default of a kind specified in § 365(b)(2) of the Bankruptcy Code, will be cured;

ii.    the maturity of such Claim as such maturity existed before such default will be reinstated;

iii.    the holder of such Claim will be compensated for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

iv.    the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim will not otherwise be altered.

**1.90  "Rejection Claim"** shall have the meaning ascribed thereto in Section 9.1 of the Plan.

**1.91  "Remaining Assets"** shall mean all assets of the Reorganized Debtor other than the Real Estate Collateral and the Assigned Causes of Action.

**1.92  "Reorganized Debtor"** shall mean the Debtor on and after the Effective Date.

**1.93  "Schedules"** shall mean the schedules of the Debtor's assets and liabilities and the statement of financial affairs filed by the Debtor, as required by § 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

**1.94  "Secured Tax Claim"** shall mean a Claim that would otherwise meet the description of an unsecured Claim of a governmental unit under § 507(a)(8) of the Bankruptcy Code but is secured by a Lien on property in which the Estate has an interest, to the extent of the value of the Claimant's interest in the Estate's interest in such property.

11

**1.95** **"Serra"** shall mean (a) Serra Community Medical Clinic, Inc., (b) affiliates of Serra Community Medical Clinic, Inc., (c) Dr. S.K. Durairaj, (d) current and former officers and directors of Serra Community Medical Clinic, Inc., and (e) current and former executives and employees of the Debtor who are or were employed by, or have or had an ownership interest in, Serra Community Medical Clinic, Inc.

**1.96** **"Stipulation of Amount and Nature of Claim"** shall mean a stipulation or other agreement between the Debtor or the Reorganized Debtor and a Claimant, or an agreed order of the Bankruptcy Court, establishing the amount and nature of a Claim.

**1.97** **"Subordinated Claim"** shall mean any Claim which (i) is subordinated pursuant to § 510(c) of the Bankruptcy Code, (ii) arises from rescission of a purchase or sale of a debt security of the Debtor, for damages arising from the purchase or sale of such debt security, or any Claim for reimbursement, contribution, or indemnification arising from or relating to any such Claim, or (iii) is a Claim for a fine, penalty, forfeiture, multiple, exemplary or punitive damages, or otherwise not predicated upon compensatory damages, and that would be subordinated in a Chapter 7 case pursuant to § 726(a)(4) of the Bankruptcy Code or otherwise.

**1.98** **"Sun"** shall mean Sun Capital Healthcare, Inc.

**1.99** **"Sun and Unsecured Notes Payment Date"** shall mean the date on which the HCREIT Promissory Note has been paid in full; provided, however, that if the HCREIT Promissory Note has not been paid in full by the date that is thirty-six (36) months after the Effective Date, then the Sun and Unsecured Notes Payment Date shall be the HCREIT Regular Payment Completion Date.

**1.100** **"Sun AR Tranche"** shall mean that portion of the Sun Claims, in the approximate amount of $4.75 million, arising from Sun's purchases of and advances against the Debtor's accounts receivable and including all fees and expenses of professionals to Sun chargeable to the Debtor under Sun's agreements with the Debtor or orders of the Bankruptcy Court.

**1.101** **"Sun Claims"** shall mean the Claims of Sun.

**1.102** **"Sun DSH Tranche"** shall mean that portion of the Sun Claims, in the approximate amount of $18,320,221.54, arising from Sun's purchases of and advances against the Debtor's rights to receive Disproportionate Share Hospital Payments.

**1.103** **"Sun Promissory Note"** shall mean the promissory note, in substantially the form included in the Plan Supplement, executed by the Reorganized Debtor and delivered to Sun on the Effective Date on account of the Sun Claims (a) in the principal amount of $17,860,000, (b) bearing regular interest from the Effective Date at 8% per annum, (c) with default interest, payable only in the event of a payment default under the Sun Promissory Note, at 12% per annum, (d) only accruing interest until the Sun and Unsecured Notes Payment Date, (e) fully amortized by equal monthly payments of principal and interest beginning on the Sun and Unsecured Notes Payment Date, and (f) maturing on the date that is seven years after the Effective Date.

**1.104** **"Sun Term Loan"** shall mean that certain term loan, on the terms substantially as set forth in the Plan Supplement, made by Sun to the Reorganized Debtor on the Effective Date in the principal amount of $2,500,000.

**1.105** **"Tuft"** shall mean Paul R. Tuft.

**1.106** **"Unclassified Claims"** shall mean those Claims described in Article II of this Plan.

**1.107** **"Unimpaired"** shall mean, when used with reference to a Claim, a Claim that is not Impaired.

**1.108** **"Workers' Compensation Insurance Causes of Action"** shall mean Causes of Action held by the Debtor and/or the Estate against Envision Hospital Corporation, the Chapter 7 estate of Envision Hospital Corporation, American Home Assurance Company, AIG Risk Management, Inc., Chartis US, Hill Insurance Services, LLC, and others with respect to retrospective premium refunds under workers' compensation policies for the Debtor for calendar years 2006, 2007 and 2008.

**C.    Rules of Interpretation**

For purposes of the Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan, the Confirmation Order or otherwise; (d) any reference to a Person as a holder of a Claim includes that Person's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) subject to the provisions of any contract, articles of incorporation, bylaws, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in § 102 of the Bankruptcy Code will apply to the extent not inconsistent with any other provision of this Section 1(C).

**D.** **Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.** **Allowed Administrative Expense Claims.** Subject to the provisions contained in Section 2.2 of this Plan, unless otherwise agreed in writing by the Reorganized Debtor and the holder of an Allowed Administrative Expense Claim, the Disbursing Agent shall pay to each holder of an Allowed Administrative Expense Claim an amount equal to its Allowed Administrative Expense Claim on the latest of (a) the Effective Date or as soon thereafter as is practicable, (b) for Ordinary Course Administrative Expense Claims, when such Claims are due and payable in the ordinary course of the Debtor's business, (c) 30 days after the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim by the entry of a Final Order, and (d) the date the Reorganized Debtor is otherwise obligated to pay such Administrative Expense Claim in accordance with the terms and provisions of the particular transactions giving rise to such Claim, the terms and provisions of this Plan and any orders of the Bankruptcy Court relating thereto.

**2.2.** **Requests for Allowance of Administrative Expense Claims.** Except as expressly set forth to the contrary in this Plan, each Person, including each Professional, shall file an application for an allowance of an Administrative Expense Claim in conformity with the following Subsections:

**a.** **Professionals.** All Professionals shall file a final application for the allowance of a Fee Claim on or before forty (40) days following the Effective Date. Objections to any Fee Claim must be filed and served on the Reorganized Debtor, former counsel for the Committee and the requesting Professional no later than twenty (20) days after the filing of the applicable application for allowance of the Fee Claim. Pursuant to its agreement with the Committee, Sun is hereby waiving the following clause from Section 5.1, lines 6-9 of the Factoring Order: "provided, however, that no more than $10,000 in the aggregate may be used by the Committee to investigate the validity, priority and amount of the Pre-Petition Obligations, the Pre-Petition Liens and the Pre-Petition Ownership Interests."

**b.** **Other Administrative Expense Claimants.** All holders of Administrative Expense Claims other than Professionals shall file a request for payment of an Administrative Expense Claim with the Bankruptcy Court on or before forty (40) days following the Effective Date. Holders of Administrative Expense Claims, including such Persons asserting a Claim under § 503(b)(9) of the Bankruptcy Code, who do not file a request for payment by such deadline shall be forever barred from asserting such Claims against the Debtor, the Reorganized Debtor or their respective property and assets (whether cash or otherwise).

14

**2.3.    Allowed Priority Tax Claims.**  Pursuant to § 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed in writing by the holder of a Priority Tax Claim and the Reorganized Debtor, each holder of an Allowed Priority Tax Claim shall be paid a value, as of the Effective Date, equal to the unpaid portion of such Allowed Priority Tax Claim in quarterly cash payments beginning on the final day of the first full quarter after the Effective Date and ending five years after the Petition Date.

**2.4.    Other Provisions Concerning Treatment of Priority Tax Claims.**  Notwithstanding the provisions of Section 2.3 of the Plan, the holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim, except as Allowed under § 507(a)(8)(G) of the Bankruptcy Code.  Other than as Allowed under § 507(a)(8)(G) of the Bankruptcy Code, any such Claim or demand for any such penalty (i) will be subject to treatment in Class 7 pursuant to § 726(a)(4) of the Bankruptcy Code and (ii) the holder of an Allowed Priority Tax Claim will not assess or attempt to collect such penalty from the Reorganized Debtor or its property.

## ARTICLE III
## CLASSES OF CLAIMS AND INTERESTS

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the following Classes.  In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described in Sections 2.1 and 2.3 of the Plan, have not been classified and thus are excluded from the following Classes.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.

**3.1.    Class 1 (Priority Claims)** shall consist of all Priority Claims.

**3.2.    Class 2 (HCREIT Claims)** shall consist of all HCREIT Claims.

**3.3.    Class 3 (Sun Claims)** shall consist of all Sun Claims.

**3.4.    Class 4 (Secured Tax Claims)** shall consist of all Secured Tax Claims.

**3.5.    Class 5 (Other Secured Claims)** shall consist of all Other Secured Claims.

**3.6.    Class 6 (General Unsecured Claims)** shall consist of all General Unsecured Claims and the unsecured portion of any Claim that if fully secured would have been included in Class 5 and as to which the Debtor shall have elected Option A or Option C treatment under Section 5.5 of the Plan.

**3.7.    Class 7 (Subordinated Claims)** shall consist of all Subordinated Claims.

**3.8.    Class 8 (Equity Interests)** shall consist of all Equity Interests.

15

# ARTICLE IV
## IDENTIFICATION OF IMPAIRED CLASSES AND VOTING CLASSES; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

**4.1    Impaired Classes of Claims Entitled to Vote.**  Holders of Claims in each Impaired Class are entitled to vote as a Class to accept or reject this Plan, other than Classes that are deemed to accept or reject this Plan as provided in Sections 4.2 and 4.3 herein.  Accordingly, the votes of holders of Claims in Classes 2, 3, 4, 5 and 6 shall be solicited with respect to this Plan.

**4.2    Class Deemed to Accept the Plan.**  Class 1 Priority Claims are Unimpaired by this Plan.  Under § 1126(f) of the Bankruptcy Code, holders of Class 1 Priority Claims are conclusively deemed to have accepted this Plan, and the votes of such holders will not be solicited.

**4.3    Classes Deemed to Reject the Plan.**  Because holders of Class 7 Subordinated Claims and Class 8 Equity Interests are not receiving or retaining any property under this Plan on account of such Claims or Equity Interests, they are conclusively deemed to have rejected this Plan under § 1126(g) of the Bankruptcy Code, and the votes of such holders will not be solicited.

**4.4    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.**  To the extent that any Impaired Class entitled to vote rejects the Plan or is deemed to have rejected the Plan, the Debtor will request confirmation of this Plan, as it may be amended or modified from time to time, under § 1129(b) of the Bankruptcy Code.

# ARTICLE V
## TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS

**5.1    Treatment of Class 1 – Priority Claims.**  Unless otherwise agreed in writing by the Reorganized Debtor and the holder of an Allowed Priority Claim, the Disbursing Agent shall pay to each holder of an Allowed Priority Claim an amount equal to its Allowed Priority Claim on the latest of (a) the Effective Date or as soon thereafter as is practicable, (b) 30 days after the date on which such Priority Claim becomes an Allowed Priority Claim by the entry of a Final Order, and (c) the date the Reorganized Debtor is otherwise obligated to pay such Allowed Priority Claim in accordance with the terms and provisions of the particular transactions giving rise to such Claim, the terms and provisions of this Plan and any orders of the Bankruptcy Court relating thereto.

**5.2    Treatment of Class 2 – HCREIT Claims.**

**a.    HCREIT Promissory Note.**  The HCREIT Claims shall be Allowed Claims and such claims shall be satisfied by (a) the Reorganized Debtor's execution and delivery of the HCREIT Promissory Note on the Effective Date, and (b) the HCREIT Cash Payment.  The HCREIT Promissory Note may be prepaid in whole or in part at any time without penalty.  The HCREIT Promissory Note shall be secured by (i) a first-priority Lien on the Real Estate Collateral, and (ii) a second-priority Lien on the Remaining Assets, immediately junior to the

16

Liens securing the Sun Term Loan and the Sun Promissory Note.  Any amounts payable under the HCREIT Promissory Note after the HCREIT Regular Payment Completion Date shall continue to be secured by the foregoing Liens, but HCREIT shall not be entitled to foreclose, or execute upon, or otherwise exercise any other rights or remedies to enforce its right to payment of such amounts until payment in full of the Sun Term Loan, the Sun Promissory Note and the General Unsecured Promissory Note.

        **b.**        **Right of Purchase by Sun.**  Sun or its designee shall have the right at any time to purchase the HCREIT Promissory Note, and receive an assignment by HCREIT of the HCREIT Promissory Note and the Liens securing the HCREIT Promissory Note, without representation or warranty other than that HCREIT is conveying to Sun or its designee all of HCREIT's right, title and interest in and to the HCREIT Promissory Note and the Liens securing the HCREIT Promissory Note, free and clear of any liens, claims or encumbrances created by or through HCREIT, upon payment to HCREIT in Cash of an amount equal to the then-unpaid balance of the HCREIT Promissory Note, which amount shall include all unpaid principal, interest, costs, fees (including legal fees) and other charges then outstanding under the HCREIT Promissory Note, with such terms of Sun's right to purchase the HCREIT Promissory Note to be included in the Intercreditor Agreement; <u>provided</u>, <u>however</u>, that the Intercreditor Agreement will not impose any material conditions on Sun's right to buy the HCREIT Promissory Note in addition to those set forth in the Plan.

        **5.3**        **Treatment of Class 3 – Sun Claims.**  The Sun Claims shall be Allowed Claims and such Claims shall be satisfied as follows:

        **a.**        **Sun AR Tranche.**  On the Effective Date, the Sun AR Tranche shall be paid in full as follows:  (i) first, Sun shall apply all of the Debtor's cash collateral held by Sun on the Effective Date; and (ii) second, the Reorganized Debtor shall pay the balance of the Sun AR Tranche to Sun in Cash.

        **b.**        **Sun DSH Tranche.**  On the Effective Date, the Reorganized Debtor shall execute and deliver the Sun Promissory Note.  Sun shall not charge or collect any prepayment penalty on account of the Debtor's whole or partial prepayment of the Sun Promissory Note.  The Sun Promissory Note shall be secured by the following Liens and pledge, which Liens and pledge shall be pari passu with the Liens and pledge securing the Sun Term Loan:  (i) a first-priority Lien on the Remaining Assets, (ii) a second-priority Lien on the Real Estate Collateral, immediately junior to the Lien securing the HCREIT Promissory Note, (iii) a first-priority Lien on the Assigned Causes of Action, which Lien shall be the sole and exclusive lien, charge or encumbrance on the Assigned Causes of Action, and (iv) a pledge of the New Stock, which pledge shall be the sole and exclusive lien, charge or encumbrance on the New Stock; <u>provided</u>, <u>however</u>, that Sun may not foreclose, or execute upon, or otherwise exercise any other rights or remedies with respect to the New Stock, until (x) the Reorganized Debtor has fully paid HCREIT the HCREIT Fee Satisfaction and all amounts due under the HCREIT Promissory Note, or (y) Sun or its designee has purchased the HCREIT Promissory Note in accordance with the provisions of Section 5.2 of the Plan.

**c.** **Assigned Causes of Action.**

**(i)** On the Effective Date, all of the Debtor's right, title and interest in and to the Assigned Causes of Action shall be transferred, assigned, conveyed and delivered to Sun or its designee and shall vest in Sun or its designee free and clear of all Claims, Liens, charges, other encumbrances; <u>provided</u>, <u>however</u>, that if Sun does not commence a proceeding in the Bankruptcy Court on or before February 11, 2011 with respect to any Assigned Cause of Action that is an Avoidance Action, such Avoidance Action shall automatically revert to the Reorganized Debtor and may be prosecuted by the Reorganized Debtor. All Assigned Causes of Action that are Workers' Compensation Insurance Causes of Actions shall remain vested in Sun or its designee, and shall not revert to the Reorganized Debtor, regardless of whether any action or proceeding is commenced with respect thereto.

**(ii)** Any Net Proceeds of Assigned Causes of Action, whether the Assigned Cause of Action is prosecuted by Sun or by the Reorganized Debtor, shall be turned over to Sun or its designee and applied to payment of the Sun Promissory Note first toward accrued and unpaid interest, and second toward principal payments owing in inverse order of maturity; <u>provided</u>, <u>however</u>, that any Net Proceeds of Assigned Causes of Action received by Sun or its designee after the Sun Promissory Note has been paid in full shall be turned over to the Class 6 Creditor Trust to apply to the unpaid amount of the General Unsecured Promissory Note, or if the General Unsecured Note has been paid in full, to the Reorganized Debtor.

**(iii)** If there are any Net Proceeds of Assigned Causes of Action resulting from Workers' Compensation Insurance Causes of Action, the application of Net Proceeds of Assigned Causes of Action resulting from Workers' Compensation Insurance Causes of Action in reduction of the Sun Promissory Note may be reversed to the extent that such funds are required for payment of any retrospective premiums that become owing under the workers' compensation policies for the Debtor for calendar years 2006, 2007 or 2008; <u>provided</u>, <u>however</u>, that any such reversal of the application of such Net Proceeds of Assigned Causes of Action Workers' Compensation Insurance Causes of Action shall not exceed the amount of such Net Proceeds of Assigned Causes of Action Workers' Compensation Insurance Causes of Action actually collected by Sun and applied by Sun to pay down the Sun Promissory Note. The Reorganized Debtor shall not be responsible for any such retrospective premium payment or repayment.

**d.** **Reconveyance of Accounts to Reorganized Debtor**. On the Effective Date, Sun shall reconvey to the Reorganized Debtor ownership of all accounts receivable of the Debtor purchased by Sun, without representation or warranty, other than that Sun is conveying to the Reorganized Debtor all of Sun's right, title and interest in and to such accounts receivable, free and clear of any liens, claims or encumbrances created by or through Sun.

**5.4** **Treatment of Class 4 – Secured Tax Claims.** Pursuant to § 1129(a)(9)(D) of the Bankruptcy Code, unless otherwise agreed in writing by the holder of a Secured Tax Claim and the Reorganized Debtor, each holder of an Allowed Secured Tax Claim shall retain the Lien securing its Allowed Secured Tax Claim and shall be paid a value as of the Effective Date equal to the unpaid portion of such Allowed Secured Tax Claim in quarterly Cash payments beginning

on the final day of the first full quarter after the Effective Date and ending five years after the Petition Date.

**5.5     Treatment of Class 5 – Other Secured Claims.**  On the Effective Date, unless otherwise agreed in writing by a Claimant and the Debtor or the Reorganized Debtor, each holder of an Allowed Other Secured Claim will receive the treatment on account of such Allowed Other Secured Claim in the manner set forth in Option A, B or C below, at the election of the Debtor.  Each Other Secured Claim shall be deemed a separate subclass with respect to such Claim.  The Debtor will be deemed to have elected Option A except with respect to any Allowed Other Secured Claim as to which the Debtor elects Option B or Option C in one or more certifications filed prior to the Effective Date.

> Option A:  Allowed Other Secured Claims with respect to which the Debtor elects or is deemed to elect Option A will retain its Liens and be paid a value, as of the Effective Date, equal to the amount of such Allowed Other Secured Claims in quarterly Cash payments for a period of seven years after the Effective Date.

> *Option B*:  Allowed Other Secured Claims with respect to which the Debtor elects Option B will be Reinstated.

> *Option C*:  A holder of an Allowed Other Secured Claim with respect to which the Debtor elects Option C will be entitled to receive (and the Debtor shall release and transfer to such holder) the collateral securing such Allowed Other Secured Claim.

**5.6     Treatment of Class 6 – General Unsecured Claims.**  Holders of Allowed General Unsecured Clams shall receive a Pro Rata interest in the General Unsecured Promissory Note issued by the Reorganized Debtor.  Neither the holders of Allowed General Unsecured Claims nor the Class 6 Creditor Trust shall charge or collect any prepayment penalty on account of the Debtor's whole or partial prepayment of the General Unsecured Promissory Note.  At the time of any payment by the Reorganized Debtor on account of the Sun Promissory Note, the Reorganized Debtor shall pay an amount equal to twenty-five percent (25%) of such payment on account of the General Unsecured Promissory Note.

**5.7     Treatment of Class 7 – Subordinated Claims.**   Holders of Allowed Subordinated Claims shall neither receive nor retain any property on account of their Claims.

**5.8     Treatment of Class 8 – Equity Interests.**  Equity Interests shall be cancelled, released and extinguished, and holders of Equity Interests shall neither receive nor retain any property on account of such Equity Interests.

**5.9     Treatment of Certain Employee Claims.**  Employee Claims for Pre-Petition PTO and Post-Petition PTO shall be treated as follows:

       **a.**      **Treatment.**  Any Pre-Petition PTO or Post-Petition PTO that remains unused thirty days after the Effective Date may be cashed out by Employees on their anniversary dates, beginning with anniversary dates that occur 30 days after the Effective Date, as set forth in the Collective Bargaining Agreements and the Debtor's policies and procedures. The Debtor hereby waives any limitations or caps set forth in the Collective Bargaining Agreements and the Debtor's policies and procedures related to the amount of Pre-Petition PTO or Post-Petition PTO that can be accrued in any given year until the Employees reach their anniversary dates and have a right to cash out any accrued Pre-Petition PTO and Post-Petition PTO.

       **b.**      **Waiver of Claims.**  The Employees shall not file, and shall be deemed to have waived the right to file, any Priority Claims, General Unsecured Claims, Administrative Expense Claims, or any other Claims related to the Pre-Petition PTO and Post-Petition PTO.

       **5.10**    **Union Claims.**  SEIU United Healthcare Workers West and Service Employees International Union Local 121 RN shall not possess or assert any Administrative Expense Claims against the Estate, as any such Claims are fully and completely satisfied by the Debtor's performance under the Collective Bargaining Agreements dated June 1, 2010.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

       **6.1**    **Continued Corporate Existence and Vesting of Assets in the Reorganized Debtor.**  As of the Effective Date, the Reorganized Debtor shall continue to exist as a corporate entity in accordance with applicable law pursuant to its Amended Certificate of Incorporation and Bylaws, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date. Except as otherwise provided in this Plan, on and after the Effective Date, all property of the Estate, including all claims, rights and Causes of Action, other than Assigned Causes of Action, shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, and Equity Interests. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of Property and compromise or settle any Claims without supervision of or approval of the Bankruptcy Court free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for professional fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

       **6.2**    **Corporate Action.**  Each of the matters provided for under this Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by shareholders, creditors, officers or directors of the Debtor or the Reorganized Debtor.

       **6.3**    **Certificate of Incorporation and Bylaws.**  On the Effective Date or as soon thereafter as is practicable, the Reorganized Debtor shall file with the Secretary of State of the State of Delaware, in accordance with §§ 103 and 303 of the Delaware General Corporation

Law, the Amended Certificate of Incorporation and Bylaws. The Amended Certificate of Incorporation and Bylaws shall become the Amended Certificate of Incorporation and Bylaws of the Reorganized Debtor. The Amended Certificate of Incorporation and Bylaws for the Reorganized Debtor shall, among other things, authorize 100 shares of New Stock, $0.0001 par value per share. The Amended Certificate of Incorporation and Bylaws for the Reorganized Debtor will be included in the Plan Supplement.

6.4 **Release of Liens.** Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, on the Effective Date, all mortgages, deeds of trust, Liens or other security interests against the property of the Estate vesting in the Reorganized Debtor or Sun will be fully released and discharged. As of the Effective Date, the Reorganized Debtor shall be authorized to file or record on behalf of creditors or putative creditors such Uniform Commercial Code termination statements, real property releases or reconveyances, or other documents or instruments as may be necessary to implement the provisions of this Section 6.4.

6.5 **Cancellation of Equity Interests and Authorization and Issuance of New Stock.**

a. As set forth in Section 5.8 of the Plan, on the Effective Date, the Equity Interests shall be cancelled, released and extinguished, and holders of Equity Interests shall neither receive nor retain any property on account of such Equity Interests.

b. On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor shall issue the New Stock to be distributed pursuant to the Plan without any further act or action by any other party under applicable law, regulation, order or rule. The issuance of the New Stock and the distribution thereof under the Plan shall be exempt from registration under the Securities Act, the Bankruptcy Code and applicable state securities laws. All documents, agreements and instruments entered into, on or as of the Effective Date contemplated by or in furtherance of the Plan, including without limitation the Recapitalization Agreement and any other agreement entered into in connection with the foregoing, shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto.

c. All of the shares of New Stock issued pursuant to the Plan shall be duly authorized, validly issued, and if applicable, fully paid and non-assessable. Until the Sun Promissory Note is paid in full, the Reorganized Debtor and Tuft shall not (a) issue any other shares of New Stock or any other shares of stock of the Reorganized Debtor unless such transferee is bound by the pledge of New Stock to Sun set forth in this Plan, (b) grant any warrants or other rights with respect to the New Stock or any other shares of stock of the Reorganized Debtor unless such transferee is bound by the pledge of New Stock to Sun set forth in this Plan, or (c) pledge or otherwise encumber the New Stock. Any attempted transfer, grant of warrants or other rights, or pledge or other encumbrance of New Stock in violation of this Section 6.5(c) shall be null and void and of no force or effect.

### 6.6    The Recapitalization Agreement.

a.    On the Effective Date and simultaneously with the vesting of the Debtor's assets in the Reorganized Debtor, the Reorganized Debtor shall enter into the Recapitalization Agreement with Tuft, which shall be approved pursuant to the Confirmation Order.

b.    As of the Effective Date and in accordance with the terms of the Recapitalization Agreement, Tuft shall own 100% of the New Stock and shall have the authority to manage the Reorganized Debtor pursuant to the terms of this Plan and other applicable law.

### 6.7    The Sun Term Loan.

a.    On the Effective Date, Sun and the Reorganized Debtor shall enter into the Sun Term Loan documents, and Sun shall advance the following amounts thereunder to the Reorganized Debtor:

(i)    the sum of $2,264,150 (the "Long Term Portion"), of which $1,499,900 shall be advanced by means of a reduction of the Cash payment by the Reorganized Debtor to Sun with respect to the Sun AR Tranche, and $724,250 shall be advanced by Sun in Cash; and

(ii)    the sum of $235,850 (the "Liquidity Portion"), all of which shall be advanced by Sun in Cash.

b.    The Long Term Portion shall mature on the date that is fifty-four (54) months after the Effective Date.  The Long Term Portion shall (i) bear regular interest at 13% per annum, (ii) with default interest, payable only in the event of a payment default with respect to the Long Term Portion, at 17% per annum, (iii) only accrue interest during the first thirty-six (36) months, and (iv) be fully amortized by equal monthly payments of principal and interest during months thirty-seven (37) through fifty-four (54).

c.    The Liquidity Portion shall be held in a separate interest-bearing depository account of the Reorganized Debtor, segregated from all other funds, subject to a deposit account control agreement in favor of Sun, which funds may be drawn upon by the Reorganized Debtor at any time in the event that the Reorganized Debtor has not received a Disproportionate Share Hospital Payment for at least 90 days, and if drawn, must be repaid to the depository account from the next succeeding Disproportionate Share Hospital Payment, together with regular interest on the drawn amount at the rate of 13% per annum, with default interest, payable only in the event of a payment default with respect to the Liquidity Portion, at the rate of 17% per annum.  On the date that is thirty-six (36) months after the Effective Date, the entire amount of the Liquidity Portion, together with all interest earned on such funds or paid by the Reorganized Debtor with respect to such funds, shall be paid and turned over to Sun.

d.    The Sun Term Loan shall be secured by (i) a first-priority Lien on the Remaining Assets, (ii) a second-priority Lien on the Real Estate Collateral, immediately junior to the Lien securing the HCREIT Promissory Note, (iii) a first-priority Lien on the Assigned Causes of Action, and (iv) a pledge of the New Stock, with such pledge subject in all respects to the limitations on the exercise of Sun's rights with respect to such pledge set forth in Section

22

5.3(b) of this Plan, which Liens and pledge shall be pari passu with the Liens and pledge securing the Sun Promissory Note.

      **e.**    The existing government and non-government lockboxes and lockbox bank accounts established by Sun in connection with its factoring facility for the Debtor shall remain in place after the Effective Date; provided, however, that absent an event of default under the Sun Term Loan, the funds received in such lockbox bank accounts shall not be commingled with any other funds held by Sun and shall be promptly remitted back to the Reorganized Debtor, as further described in the Intercreditor Agreement and any other relevant agreements, documents or letters.

      **f.**    Sun shall not charge or collect any prepayment penalty with respect to the Sun Term Loan.

    **6.8**    **Provisions Relating to Post-Confirmation Administration of the Reorganized Debtor.**

      **a.**    **Board of Directors.**  As of the Effective Date, the Board of Directors shall be the governing body of the Reorganized Debtor for one year or such later time when a shareholders' meeting is scheduled pursuant to the Organizational Documents or applicable non-bankruptcy law, whichever is longer, and shall assume the governance of the Reorganized Debtor including, but not limited to, determining who shall serve as the Reorganized Debtor's Officers, supervisors, managers and executive employees.

      **b.**    **Identity of Board of Directors.**  On the Effective Date, the term of the current members of the board of directors of the Debtor, if any, will expire. The initial member of the Board of Directors shall be Tuft. The Reorganized Debtor shall have the right to elect additional members of the Board of Directors, provided that such members shall not be a creditor of the Reorganized Debtor or relative of Tuft unless otherwise approved by Sun and HCREIT.

      **c.**    **Other Provisions.**  Other provisions governing the service, term and continuance in office of the members of the Board of Directors shall be as set forth in the Organizational Documents of the Reorganized Debtor.

    **6.9**    **Disbursing Agent.**  On the Effective Date, the Reorganized Debtor shall have the authority to serve as, or appoint, the Disbursing Agent to carry out the duties set forth in this Plan. The Reorganized Debtor shall have the authority to replace the Disbursing Agent at any time, with or without cause, subject to the terms of any agreement between the Reorganized Debtor and the Disbursing Agent. The Reorganized Debtor shall file any agreement with the Disbursing Agent with the Bankruptcy Court and serve such agreement on the United States Trustee, HCREIT, Sun and the Class 6 Creditor Trustees.

    **6.10**    **Closing of Case.**  If, after the Effective Date, the Chapter 11 Case is closed, such closing, (a) shall not alter, amend, revoke, or supersede the terms of this Plan, (b) shall not affect any rights of the Debtor, the holders of Claims or Equity Interests or the treatment of any other Person under this Plan, (c) shall continue to cause the terms of this Plan to remain binding on all

23

Persons, (d) shall cause all orders of the Bankruptcy Court to remain in full force and effect, and (e) shall cause the Bankruptcy Court to retain all jurisdiction set forth in Article XII of this Plan.

**6.11    Effectuating Documents; Further Transactions.**  The chief executive officer, the chief financial officer, chairman of the Debtor's board of directors or any other executive officer of the Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The secretary or assistant secretary of the Debtor shall be authorized to certify or attest to any of the foregoing actions.

**6.12    Exemption from Certain Transfer Taxes and Recording Fees.**  Pursuant to § 1146(a) of the Bankruptcy Code, any transfers from the Debtor to the Reorganized Debtor, Sun or to any other Person pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property, will not be subject to any document recording tax, stamp tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**6.13    Withholding and Reporting Requirements.**  In connection with this Plan, the Reorganized Debtor shall (a) comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority; (b) timely file all tax returns as required by law to be filed; (c) continue to engage accountants or such other professionals to prepare and file all tax returns as required by law to be filed; (d) take such other actions as are reasonably necessary, including the allocation of sufficient funds, to file such returns; and (e) shall timely pay all taxes arising under any requirements or tax returns applicable to this Plan.

**6.14    Quarterly Reports and United States Trustee's Fees.**  The Debtor's obligation of filing monthly financial reports with the United States Trustee shall pass to and become the obligation of the Reorganized Debtor and such obligation shall continue following the Confirmation Date until the obligation to pay the United States Trustee's fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) ends, except such monthly reports will be filed quarterly. The Officers shall prepare, sign, and file all reports after the Confirmation Date and shall pay any United States Trustee's fees due and owing.  Copies of such reports shall be served on the Board of Directors, the United States Trustee, counsel for the Reorganized Debtor, HCREIT and Sun, and on any party-in-interest requesting continued service of same.

**6.15    Preservation of Causes of Action.**

      **a.    Vesting of Causes of Action.**  In accordance with § 1123(b) of the Bankruptcy Code, except (i) as otherwise provided in this Plan, and (ii) with respect to Assigned Causes of Action, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all claims and Causes of Action held by the Debtor and/or the Estate, whether arising before or after the Petition Date.  Except for the Assigned Causes of

24

Action, all such claims and Causes of Action, along with all rights, interests and defenses related thereto, shall vest with the Reorganized Debtor. The Assigned Causes of Action, along with all rights, interests and defenses related thereto, shall vest in Sun or its designee.

**b.** **Reservation of Causes of Action.** Unless any Cause of Action against a Person is expressly waived, relinquished, exculpated, released, compromised or settled in this Plan or a Final Order, the Debtor and the Reorganized Debtor specifically reserve all Causes of Action, other than the Assigned Causes of Action, for later adjudication, and Sun specifically reserves all Assigned Causes of Action for later adjudication. Therefore, no preclusion doctrine, estoppel (judicial, equitable or otherwise) or laches shall apply to any of the Causes of Action upon, after or as a consequence of the confirmation, the Effective Date or consummation of this Plan.

**c.** **Preservation of Defensive Use of Causes of Action.** Whether or not any Cause of Action other than an Assigned Cause of Action is pursued or abandoned, the Debtor and the Reorganized Debtor reserve their rights to use any such Cause of Action defensively, including for the purposes of asserting a setoff or recoupment, or to object to all or part of any Claim pursuant to § 502(d) of the Bankruptcy Code or otherwise. Whether or not any Assigned Cause of Action is pursued or abandoned, Sun reserves its rights to use any such Assigned Cause of Action defensively, including for the purposes of asserting a setoff or recoupment, or to object to all or part of any Claim pursuant to § 502(d) of the Bankruptcy Code or otherwise.

**d.** **Discretion to Pursue or Settle and Immunity of the Parties.** The Reorganized Debtor shall have discretion to pursue or not to pursue, to settle or not to settle, to try or not to try, and/or to appeal or not to appeal all Causes of Action other than the Assigned Causes of Action, and Sun shall have discretion to pursue or not to pursue, to settle or not to settle, to try or not to try, and/or to appeal or not to appeal all Assigned Causes of Action, as each of them determines in the exercise of its business judgment and without any further approval of the Bankruptcy Court thereof. The Reorganized Debtor, the Board of Directors, Sun and their respective attorneys and other professionals shall have no liability for the outcome of their decisions.

**6.16    No Liability for Solicitation or Participation.**

As specified in § 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sales, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

**6.17    Class 6 Creditor Trust.**

**a.** **Class 6 Creditor Trustees.** The Confirmation Order shall approve, as of the Effective Date, the Class 6 Creditor Trust Agreement, which agreement shall provide for the appointment of no less than three (3) members to act as the Class 6 Creditor Trustees to administer the Class 6 Creditor Trust, for the benefit of holders of Allowed General Unsecured

25

Claims. The Class 6 Creditor Trustees shall serve without any bond and shall act in accordance with the Class 6 Creditor Trust Agreement.

**b.    Compensation of Class 6 Creditor Trustees.**    The Class 6 Creditor Trustees shall be entitled to receive, on a monthly basis, payment of reasonable fees and reimbursement of reasonable expenses without further Court approval from the assets of the Class 6 Creditor Trust, in accordance with the Class 6 Creditor Trust Agreement.  Each Class 6 Creditor Trustee shall serve for the duration of the Class 6 Creditor Trust, subject to earlier death, resignation, incapacity or removal as specifically provided in the Class 6 Creditor Trust Agreement.

**c.    Funding of the Creditor Trust.**    The Class 6 Creditor Trust will be funded solely with the Class 6 Creditor Trust Assets.

**d.    Powers and Duties.**    The Class 6 Creditor Trust shall have the following rights, powers and duties:

**(i)**    Hold all of the Class 6 Creditor Trust Assets and exercise full right, power and discretion to manage such property and execute, acknowledge and deliver any and all instruments as may be appropriate or necessary as determined by the Class 6 Creditor Trust in its discretion;

**(ii)**    Receive payments under the General Unsecured Promissory Note for the benefit of holders of Allowed General Unsecured Claims and any modifications, amendments, or other duties related to the General Unsecured Promissory Note after the Effective Date;

**(iii)**    Make interim and final distributions to the Holders of Allowed General Unsecured Claims;

**(iv)**    File all tax and regulatory forms, returns, reports and other documents required with respect to the Class 6 Creditor Trust;

**(v)**    File suit or any appropriate motion for relief in the Court or in any other court of competent jurisdiction to resolve any claim, disagreement, conflict or ambiguity in connection with the exercise of the Class 6 Creditor Trust's rights, powers or duties; and

**(vi)**    Retain professionals, including accountants and attorneys, at the expense of the Class 6 Creditor Trust, to assist the Class 6 Creditor Trustees in the performance of their duties.

**e.    The Termination of the Class 6 Creditor Trust.**    The Class 6 Creditor Trust shall be irrevocable.  The Class 6 Creditor Trust shall terminate when the Class 6 Creditor Trustees have performed all of their duties under the Plan and the Class 6 Creditor Trust Agreement, including the final distribution of all the property of the Class 6 Creditor Trust in respect of Allowed General Unsecured Claims, which date shall not be more than nine (9) years and one (1) month after the Effective Date; provided, however, the Court may upon good cause

26

shown order the Class 6 Creditor Trust to remain open so long as shall be necessary to liquidate and distribute all its property.  Upon good cause shown, the Court may modify the rights, powers and duties of the Class 6 Creditor Trust or the procedures for appointing successors to the Class 6 Creditor Trustees in light of material changes in circumstances upon the motion of the Class 6 Creditor Trust.

       **f.**    **Additional Provisions of the Class 6 Creditor Trust Agreement.**  In addition to the provisions in the Plan with respect to the Class 6 Creditor Trust, the Class 6 Creditor Trust Agreement will provide for, among other things, other actions to be taken by the Class 6 Creditor Trust and the Class 6 Creditor Trustees, including the removal of Class 6 Creditor Trustees or appointment of successor Class 6 Creditor Trustees, the liability of the Class 6 Creditor Trustees, the effect of actions by the Class 6 Creditor Trustees, and the indemnification of the Class 6 Creditor Trustees.  To the extent not set forth in the Plan, the functions and procedures applicable to the Class 6 Creditor Trust and the powers and duties of the Class 6 Creditor Trustees and the rights of the holders of Interests in the Class 6 Creditor Trust shall be governed by the provisions of the Class 6 Creditor Trust Agreement.

    **6.18**    **Retiree Benefits.**  From and after the Effective Date, the Reorganized Debtor will be obligated to pay retiree benefits (as defined in § 1114(a) of the Bankruptcy Code), if any, in accordance with the terms of any retiree benefit plans or other agreements governing the payment of such benefits, subject to any rights to amend, modify or terminate such benefits under the terms of the applicable retiree benefits plan, other agreement or applicable non-bankruptcy law.

**ARTICLE VII**
**PROVISIONS GOVERNING DISTRIBUTIONS**

    **7.1**    **Distributions.**  Subject to Bankruptcy Rule 9010, all distributions under this Plan shall be made by the Disbursing Agent pursuant to the terms and conditions contained in this Plan; provided, however, that no distribution shall be made on behalf of any Claim which may be subject to disallowance under § 502(d) of the Bankruptcy Code.

    **7.2**    **Distributions of Cash.**  All distributions of Cash to be made by the Disbursing Agent pursuant to this Plan shall be made by a check or wire transfer from the Disbursing Agent's account maintained in accordance with this Plan.

    **7.3**    **Effective Date Payments.**  As soon as is practicable after the Effective Date, the Disbursing Agent shall make the initial distributions (the "Initial Distribution Date") to holders of Allowed Administrative Expense Claims and Allowed Priority Claims entitled to such distributions pursuant to the Plan.  All payments shall be made in accordance with the terms and provisions of the Plan.

    **7.4**    **Distributions on a Subsequent Distribution Date.**  Pursuant to the terms of provisions of the Plan, the Disbursing Agent shall, on a subsequent date (a "Subsequent Distribution Date"), distribute such Cash or other assets to the holders of Claims entitled to distributions under the Plan that were Allowed on the Effective Date or subsequently have

become Allowed Claims on or before the Subsequent Distribution Date in accordance with the treatment of Allowed Claims established by the Plan.

**7.5    Distributions on a Final Distribution Date.**    Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall establish a final distribution date (the "Final Distribution Date") upon which the Disbursing Agent shall distribute such Cash or other assets to the holders of Claims entitled to distributions under the Plan that were Allowed on the Effective Date or subsequently have become Allowed Claims on or before the Final Distribution Date in accordance with the treatment of Allowed Claims established by the Plan.

**7.6    Delivery of Distributions and Undeliverable Distributions.**    Distributions to the holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules unless superseded by the address as set forth on the Proof of Claim filed by such holder or by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a change of address.    If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified in writing within six months of the distribution date of such holder's then current address, at which time all distributions shall be made to such holder, without interest.    All claims for undeliverable distributions shall be made within six months after the date such undeliverable distribution was initially made.    If any claim for an undeliverable distribution is not timely made as provided herein, such claim shall be forever barred with prejudice.    After such date, all unclaimed property (a) shall be applied first to satisfy the costs of administering and fully consummating this Plan, then shall be transferred to the Reorganized Debtor and available to be used for general corporate purposes, including working capital, provided that unclaimed distributions on account of General Unsecured Claims shall be turned over to the Class 6 Creditor Trust for further Pro Rata distribution to the remaining holders of Allowed General Unsecured Claims, and (b) the holder of any such Claim shall not be entitled to any other or further distribution under this Plan on account of such undeliverable distribution or such Claim.

**7.7    Time Bar to Cash Payments and Disallowances.**    Checks issued by the Disbursing Agent in respect of Allowed Clams shall be void if not negotiated within six months after the date of issuance thereof.    Requests for reissuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check originally was issued, on or before the expiration of six months following the date of issuance of such check.    After such date, (a) all funds held on account of such void check shall be applied first to satisfy the costs of administering and fully consummating this Plan, then will be available to the Reorganized Debtor to be used for general corporate purposes, provided that uncashed distributions on account of General Unsecured Claims shall be turned over to the Class 6 Creditor Trust for further Pro Rata distribution to the remaining holders of Allowed General Unsecured Claims, (b) the Claim of the holder of any such void check shall be disallowed, and (c) such Claimant shall not be entitled to any other or further distribution on account of such Claim.

**7.8    Minimum Distributions.**  If a distribution to be made to a holder of an Allowed Claim on any Distribution Date, including the Final Distribution Date, would be $10.00 or less, notwithstanding any contrary provision of this Plan, no distribution will be made to such Claimant.

**7.9    Transactions on Business Days.**  If the Effective Date or any other date on which a transaction, event or act may occur or arise under this Plan shall occur on Saturday, Sunday or other day that is not a Business Day, the transaction, event or act contemplated by this Plan to occur on such day shall instead occur on the next day which is a Business Day.

**7.10    Dividends and Equity Distributions.**  The Reorganized Debtor shall not pay any dividends or make any distributions to its equity holders until the HCREIT Promissory Note, the Sun Promissory Note and the General Unsecured Promissory Note are paid in full.

**7.11    Distributions after Allowance.**  Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes Allowed, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which such holder belongs.

**7.12    Disputed Payments.**  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any distribution, the Disbursing Agent may, in lieu of making such distribution to such Person, make such distribution into an escrow account until the disposition thereof shall be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute.

**7.13    No Distributions in Excess of Allowed Amount of Claim.**  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim.

## ARTICLE VIII
## PROCEDURES REGARDING DISPUTED CLAIMS

**8.1    Objections to Claims.**  The Reorganized Debtor shall have the exclusive right to object to Claims after the Effective Date including, but not limited to, objections regarding the allowance, classification or amount of Claims, subject to the procedures and limitations set forth in this Plan, the Bankruptcy Rules, and the Bankruptcy Code; provided, however, that the deadline for the Reorganized Debtor to file objections to Claims shall be one hundred eighty (180) days after the Effective Date, unless further extended by the Bankruptcy Court upon notice to the holders of the twenty (20) largest General Unsecured Claims and all others requesting notice pursuant to Bankruptcy Rule 2002.  All such objections shall be litigated to a Final Order except to the extent the Reorganized Debtor, in its sole discretion, elects to withdraw any such objection or compromise, settle or otherwise resolve any such objection, in which event the Reorganized Debtor may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

**8.2    No Distributions Pending Determination of Allowance of Disputed Claims.**  No distributions shall be made under this Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim.

**8.3     Reserve Accounts for Disputed Claims.**  On or prior to the Initial Distribution Date and each Subsequent Distribution Date, the Disbursing Agent shall reserve Cash in an aggregate amount sufficient to pay each holder of a Disputed Claim (a) the amount of Cash that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Initial Distribution Date, or (b) such lesser amount as the Bankruptcy Court may estimate or may otherwise order (the "Disputed Claims Reserve").

**8.4     Investment of Disputed Claims Reserve**.  The Disbursing Agent shall be permitted, from time to time, to invest all or a portion of the Cash in the Disputed Claims Reserve in United States Treasury Bills (or in a fund that invests substantially all of its assets in United States Treasury securities), interest-bearing certificates of deposit, tax exempt securities or investments permitted by § 345 of the Bankruptcy Code, with the concurrence of the Board of Directors or as otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate risk.  All interest earned on such Cash shall be held in the Disputed Claims Reserve and, after satisfaction of any expenses incurred in connection with the maintenance of the Disputed Claims Reserve, including taxes payable on such interest income, if any, shall be transferred out of the Disputed Claims Reserve and shall be used by the Reorganized Debtor in accordance with this Plan.

**8.5     Allowance and Payment of Disputed Claims**.  If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which such Disputed Claim becomes an Allowed Claim or as soon thereafter as is practicable, distribute from the Disputed Claims Reserve to the holder of such Allowed Claim the amount of distributions that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date.

**8.6     Release of Excess Funds from Disputed Claims Reserve**.  If at any time or from time to time after the Effective Date, there shall be Cash in the Disputed Claims Reserve in an amount in excess of the amount which the Disbursing Agent is required at such time to reserve on account of Disputed Claims under this Plan or pursuant to any order of the Bankruptcy Court, the Disbursing Agent may release such funds from the Disputed Claims Reserve to the Reorganized Debtor, provided that excess funds held in a Disputed Claims Reserve on account of General Unsecured Claims shall be turned over to the Class 6 Creditor Trust for further Pro Rata distribution to the remaining holders of Allowed General Unsecured Claims.

**8.7     Estimation**.  The Debtor or the Reorganized Debtor, as the case may be, may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor, as the case may be, have previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Reorganized Debtor, as the case may be, may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of the aforementioned Claims objection, estimation and resolution

30

procedures are cumulative and not necessarily exclusive of one another.  On and after the Confirmation Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved without further order of the Bankruptcy Court as provided in Section 8.1 of this Plan.

## ARTICLE IX
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1    Rejection of Executory Contracts and Unexpired Leases.**  Except as otherwise provided in the Confirmation Order, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, all remaining Executory Contracts and Unexpired Leases that exist between the Debtor and any Person shall be deemed rejected as of the Effective Date, except for any Executory Contract or Unexpired Lease (i) that has been assumed, assumed and assigned or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, or (ii) as to which a motion for approval of the assumption, assumption and assignment or rejection has been filed prior to the later of (x) the Effective Date, or (y) January 31, 2011.  Any claims arising from the rejection of an Executory Contract or Unexpired Lease ("Rejection Claims") shall be classified in Class 6 under this Plan.  Notwithstanding anything to the contrary herein, the Debtor is not rejecting its Collective Bargaining Agreements with SEIU United Healthcare Workers West and Service Employees International Union Local 121 RN dated June 1, 2010, which shall remain binding after the Effective Date.

**9.2    Bar Date for Filing Rejection Claims.**  A Proof of Claim asserting a Rejection Claim shall be filed with the Bankruptcy Court on or before the fortieth (40th) day after the Effective Date or be forever barred from assertion of any Rejection Claim against and payment from the Reorganized Debtor.

## ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

**10.1    Conditions to the Effective Date.**  The Effective Date will not occur, and the Plan will not be consummated unless and until the following conditions have been satisfied or duly waived pursuant to Section 10.2 of this Plan:

**a.**    The Confirmation Order, with the Plan and all exhibits and annexes to each, in form and substance reasonably acceptable to the Debtor, shall have been entered by the Bankruptcy Court, and shall be a Final Order, and no request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending; provided, however, that if the Confirmation Order has not become a Final Order because a notice of appeal has been timely filed and the parties are not stayed or enjoined from consummating the Plan, this Section 10.1(a) shall be deemed satisfied unless the effect of the appeal could reasonably be expected to be adverse to the business, operations, property, condition (financial or otherwise) or prospects of the Reorganized Debtor;

**b.**    All actions, documents and agreements necessary to implement this Plan shall be in form and substance reasonably satisfactory to the Debtor and shall have been effected or executed as applicable;

31

**c.** Tuft shall have executed the Guarantees and the Recapitalization Agreement;

**d.** The Debtor shall have entered into the Sun Term Loan;

**e.** The Debtor shall have obtained any new hospital, pharmacy or laboratory licenses that may be required for operation of the Hospital by the Reorganized Debtor;

**f.** HCREIT and Sun shall have entered into the Intercreditor Agreement;

**g.** The Debtor shall have sufficient Cash on hand to make all required cash payments on the Effective Date; and

**h.** The Debtor shall have entered into a settlement with the Office of Inspector General concerning that certain self-disclosure letter, dated August 8, 2008, providing for a payment of $764,250 to the United States of America on the Effective Date.

**10.2    Waiver of Conditions**.  The conditions set forth in Section 10.1(a), (b) and (e) of this Plan may be waived by the Debtor, without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing.

**10.3    Effect of Nonoccurrence of Conditions to the Effective Date**.  If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section 10.2 of the Plan, then upon motion by the Debtor or any party-in-interest made before the time that each of such conditions has been satisfied and upon notice to such parties-in-interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is satisfied before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to this Section 10.3, (1) the Plan will be null and void in all respects; and (2) nothing contained in the Plan will:   (a) constitute a waiver or release of any claims by or against the Debtor; or (b) prejudice in any manner the rights of the Debtor or any other party-in-interest.

**ARTICLE XI**
**EFFECT OF CONFIRMATION**

**11.1    Discharge of the Debtor.**  Pursuant to § 1141(d) of the Bankruptcy Code and, except as otherwise specifically provided in this Plan or in the Confirmation Order, the rights afforded and the payments and distributions to be made and the treatment under the Plan shall be in complete exchange for, and in full and unconditional settlement, satisfaction, discharge, and release of any and all existing debts and Claims and termination of all Equity Interests of any kind, nature, or description whatsoever against or in the Debtor, the Reorganized Debtor, their property, the Debtor's assets, or the Estate, and shall effect a full and complete release, discharge, and termination of all Liens, security interests, or other claims, interests, or encumbrances upon all of the Debtor's assets and property.  Further, all Persons are precluded from asserting, against the Debtor or the Reorganized Debtor or their respective successors, or any property that is to be distributed under the terms of the Plan, any Claims, obligations, rights,

32

causes of action, liabilities, or Equity Interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, other than as expressly provided for in the Plan, or the Confirmation Order, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed; or (c) the Claimant based upon such debt has accepted the Plan.  Except as otherwise provided in the Plan or the Confirmation Order, all Claimants and holders of Equity Interests arising prior to the Effective Date shall be permanently barred and enjoined from asserting against the Reorganized Debtor or the Debtor, or their successors or property, or the Debtor's assets, any of the following actions on account of such Claim or Equity Interest:  (i) commencing or continuing in any manner any action or other proceeding on account of such Claim or Equity Interest against the Reorganized Debtor, the Debtor, or the property to be distributed under the terms of the Plan, other than to enforce any right to distribution with respect to such property under the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Reorganized Debtor, the Debtor or any of the property to be distributed under the terms of the Plan, other than as permitted under sub-paragraph (i) above; (iii) creating, perfecting, or enforcing any Lien or encumbrance against property of the Reorganized Debtor, the Debtor, or any property to be distributed under the terms of the Plan; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due any Debtor, the Reorganized Debtor, their assets or any other property of the Debtor, the Reorganized Debtor, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.  The foregoing discharge, release and injunction are an integral part of the Plan and are essential to its implementation.  The Debtor and the Reorganized Debtor shall have the right to independently seek the enforcement of the discharge, release and injunction set forth in this Section 11.1.

**11.2    No Waiver of Discharge.**    Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any way the discharge granted to the Debtor upon confirmation of the Plan by § 1141 of the Bankruptcy Code.

**11.3    Binding Effect.**    As of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, all Claimants and holders of Equity Interests, other parties-in-interest and their respective heirs, successors, and assigns.

**11.4    Term of Injunctions or Stays.**    Unless otherwise provided in this Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date, at which time they are replaced with the injunction set forth in Section 11.1 of the Plan.

**11.5    Setoffs.**    Except with respect to Claims specifically Allowed under the Plan including, without limitation, the HCREIT Claims and the Sun Claims, the Debtor or the Reorganized Debtor, as applicable, may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against such Claimant; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by

the Debtor or the Reorganized Debtor of any such claim that the Debtor or the Reorganized Debtor may have against such Claimant.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Case, this Plan and the Confirmation Order pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

      **a.**     to determine the allowance or classification of Claims and to hear and determine any objections thereto;

      **b.**     to determine any and all motions, adversary proceedings, applications, contested matters and other litigated matters under the Bankruptcy Code or arising in or related to the Chapter 11 Case that may be pending in the Bankruptcy Court on, or initiated after, the Effective Date;

      **c.**     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

      **d.**     to issue such orders in aid of the execution, implementation and consummation of this Plan to the extent authorized by § 1142 of the Bankruptcy Code or otherwise;

      **e.**     to construe and take any action to enforce this Plan;

      **f.**     to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

      **g.**     to modify this Plan pursuant to § 1127 of the Bankruptcy Code, or to remedy any apparent non-material defect or omission in this Plan, or to reconcile any non-material inconsistency in this Plan so as to carry out its intent and purposes;

      **h.**     to hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 328(a), 330, 331, 333, 503(b) or 1103 of the Bankruptcy Code;

      **i.**     to determine any other requests for payment of Priority Tax Claims, Priority Claims or Administrative Expense Claims;

      **j.**     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

      **k.**     to consider and act on the compromise and settlement or payment of any Claim against the Debtor, the Reorganized Debtor or the Estate;

34

**l.**      to recover all assets of the Debtor and property of the Estate, wherever located;

**m.**      to hear and determine Causes of Action and Assigned Causes of Action brought by the Reorganized Debtor or Sun, respectively; provided, however, that nothing in the retention of jurisdiction under this clause (m) shall be construed as a determination that the Bankruptcy Court has or does not have jurisdiction to hear and determine any Assigned Causes of Action against the Envision Entities;

**n.**      to determine all questions and disputes regarding title to the assets of the Debtor, the Reorganized Debtor or the Estate; provided, however, that nothing in the retention of jurisdiction under this clause (n) shall be construed as a determination that the Bankruptcy Court has or does not have jurisdiction to hear and determine any Assigned Causes of Action against the Envision Entities;

**o.**      to issue injunctions, enter and implement other orders or to take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of this Plan or the Confirmation Order;

**p.**      to remedy any breach or default occurring under this Plan;

**q.**      to resolve and finally determine all disputes that may relate to, impact on or arise in connection with this Plan;

**r.**      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**s.**      to hear any other matter consistent with the provisions of the Bankruptcy Code; and

**t**.      to enter a final decree closing the Chapter 11 Case.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**13.1      Modification of Plan.**  The Debtor may propose amendments to or modifications of this Plan under § 1127 of the Bankruptcy Code at any time prior to the entry of the Confirmation Order.  After the Confirmation Date, the Reorganized Debtor may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of this Plan so long as the interests of Claimants are not materially and adversely affected.

**13.2      Distribution Pending Stay on Appeal.**  Any stay pending appeal shall apply only to amounts in controversy and distribution of amounts not in controversy shall continue in accordance with the terms of the Plan.

35

**13.3    Extensions of Time.**    Notwithstanding any time limitation in this Plan, the Bankruptcy Court may, pursuant to a motion filed with the Bankruptcy Court prior to the expiration of such time limitation and for good cause shown, extend such time limitation.

**13.4    Releases and Related Matters.**

**a.    General Releases by Holders of Claims.**

As of the Effective Date, in consideration for the obligations of the Debtor and the Reorganized Debtor under the Plan and the cash and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each holder of a Claim that votes in favor of the Plan will be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the right to enforce obligations under or reserved by the Plan and the contracts, instruments, releases, agreements and documents delivered thereunder and the right to contest Fee Claims), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case or the Plan that such Person has, had or may have against (i) the Debtor, (ii) the Debtor's directors, officers, employees, agents and attorneys serving in that capacity as of the Confirmation Date, (iii) HCREIT and its current and former officers, directors, shareholders, affiliates, employees, agents, attorneys and other professionals, (iv) Sun and its current and former officers, directors, shareholders, affiliates, employees, agents, attorneys and other professionals, (v) Serra, and (vi) the Envision Entities (other than Sun who is not releasing the Envision Entities herein).

**b.    Releases by the Debtor, Sun and HCREIT.**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, Sun, HCREIT, the Debtor and the Reorganized Debtor and any and all Persons claiming through or on behalf of the Debtor or the Reorganized Debtor including, without limitation, the Committee, will be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities whatsoever in connection with or related to the Debtor, the Chapter 11 Case or the Plan (other than the rights of the Debtor or Reorganized Debtor to enforce the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Reorganized Debtor, the Chapter 11 Case or the Plan, and that may be asserted by or on behalf of Sun, HCREIT, the Debtor or its Estate or the Reorganized Debtor against (i) the Debtor's directors, officers, employees, agents and attorneys serving in that capacity as of the Confirmation Date, (ii) HCREIT and its current and former officers, directors, shareholders, affiliates, employees, agents, attorneys and other professionals, (iii) Sun and its current and former officers, directors, shareholders, affiliates, employees, agents, attorneys and other professionals, (iv) Serra, and (v)

the Envision Entities, other than any Assigned Causes of Action, which are expressly reserved; provided, however, that (x) Sun is not, and shall not be deemed to be, releasing any party included in (iii) or (v) above, and (y) HCREIT is not, and shall not be deemed to be, releasing any party included in (ii) above.

### c.    Serra Release.

In consideration for the releases set forth in section 13.4(a) and (b) of this Plan and pursuant to § 1123(b)(3)(A) of the Bankruptcy Code, as of the Effective Date, Serra will be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, Causes of Action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that may be asserted by or on behalf of Serra against (i) the Debtor or its Estate including, without limitation, with respect to any Proof of Claim filed against the Estate, (ii) the Debtor's directors, officers, employees, agents and attorneys serving in that capacity as of the Confirmation Date, (iii) HCREIT and its current and former officers, directors, shareholders, affiliates, employees, agents, attorneys and other professionals, (iv) Sun and its current and former officers, directors, shareholders, affiliates, employees, agents, attorneys and other professionals, and (v) the Envision Entities.

### d.    Injunction Related to Releases.

The Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan, including pursuant to the releases in this Section 13.4.

**13.5    Treatment of the Envision Claim and Release.**  The $14.7 million Envision Claim shall be treated as (a) an Allowed General Unsecured Claim in Class 6 in the amount of $5,000,000 (the "Allowed Envision Claim"); and (b) an Allowed Equity Interest in Class 8 in the amount of $9,700,000.  In consideration for the aforementioned treatment of the Envision Claim and the releases set forth in section 13.4(b) of this Plan and pursuant to § 1123(b)(3)(A) of the Bankruptcy Code, as of the Effective Date, the Envision Entities will be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that may be asserted by or on behalf of the Envision Entities against (i) the Debtor or its Estate including, without limitation, with respect to any Proof of Claim filed against the Estate, other than the Allowed Envision Claim, (ii) HCREIT and its current and former officers, directors, shareholders, affiliates, employees, agents, attorneys and other professionals, and (iii) Serra.  Nothing contained in this Plan constitutes an acknowledgment or agreement by the Envision Entities that the Debtor and/or the Estate have any right or claim to the retrospective premium refunds under any workers' compensation policies for calendar year 2006, 2007 and 2008 or that the Debtor and/or the Estate have any Causes of Action against the Envision Entities, including, but not limited to, any Assigned Causes of Action against the Envision Entities.  Notwithstanding any provision to the contrary

37

contained herein, the Envision Entities are not releasing the Debtor, the Estate, or the Reorganized Debtor from any claims, causes of action, defenses or any other rights the Envision Entities may have in connection with the Workers' Compensation Insurance Causes of Action, other than any Claim against the Debtor or its Estate, which are expressly released subject to the Allowed Envision Claim.

**13.6    Allocation of Plan Distributions Between Principal and Interest.**  To the extent that any Allowed Claim entitled to a distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, for United States federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**13.7    Dissolution of the Committee.**  Effective on the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to applications for Fee Claims.  The Professionals retained by the Committee shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date pursuant to Section 2.2 of this Plan or any objections thereto.

**13.8    Notices**.  Any pleading, notice or other documents required by the Plan or the Confirmation Order to be served on or delivered to the Debtor, the Reorganized Debtor, HCREIT, Sun or the Committee must be sent by overnight delivery service, facsimile transmission, courier service or messenger to:

If to the Debtor, to:

>   Ayman Mousa
>   Chief Executive Officer
>   Pacifica Hospital of the Valley
>   9449 San Fernando Rd.
>   Sun Valley, California 91352-1421
>   Fax:  (818) 252-2478

>   and

>   Edward J. Green, Esq.
>   Geoffrey S. Goodman, Esq.
>   FOLEY & LARDNER LLP
>   321 North Clark Street, Suite 2800
>   Chicago, Illinois 60654
>   Fax:  (312) 832-4700

>   and

David Gould, Esq.
DAVID GOULD, A PROFESSIONAL CORPORATION
23975 Park Sorrento, Suite 200
Calabasas, California 91302-4001
Fax:  (818) 449-4803

(Counsel to the Debtor and the Reorganized Debtor)

If to the Reorganized Debtor, to:

Paul Tuft
Pacifica Hospital of the Valley
9449 San Fernando Rd.
Sun Valley, California 91352-1421
Fax:  (818) 252-2478

If to the Committee, to:

Samuel Maizel, Esq.
Malhar S. Pagay, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Fax:  (310) 201-0760

(Counsel to the Committee)

If to HCREIT, to:

Michael L. Bernstein, Esq.
ARNOLD & PORTER LLP
555 Twelfth St., NW
Washington, DC 20004-1206
Fax:  (202) 942-5999

(Counsel to HCREIT)

If to Sun, to:

Mary H. Rose, Esq.
BUCHALTER NEMER
1000 Wilshire Blvd., Suite 1500
Los Angeles, California 90017-2457
Fax:  (213) 630-5629

(Counsel to Sun)

39

**13.9    Transfer of Claims.**  Claims may be transferred after the Confirmation Date but such transfer will be honored only if applicable notice is given to the Reorganized Debtor and only in accordance with Bankruptcy Rule 3001.  Transfers of Claims before the Confirmation Date shall be recognized if the transfer was done in accordance with Bankruptcy Rule 3001. Nothing set forth in this Section 13.8 shall restrict the transfer or assignment of the HCREIT Promissory Note or the Sun Promissory Note, which notes shall be freely transferable and assignable, upon appropriate notice to the Reorganized Debtor, without compliance with Bankruptcy Rule 3001 or order of the Bankruptcy Court.

**13.10    Captions.**  Paragraph captions used herein are for convenience only and shall not affect the construction of this Plan.

**13.11    Choice of Law.**  Except to the extent that (a) the Bankruptcy Code or other federal statutes or regulations, or (b) the Delaware General Corporation Law, are applicable, the rights and obligations arising under the Plan shall be governed by, construed, and enforced in accordance with the laws of the State of California without giving effect to the principles of conflict of laws thereof.  In the event of an inconsistency between the terms of this Plan and the laws of the State of California, the terms of this Plan shall prevail.

Dated:  December 17, 2010

Respectfully submitted,

PACIFICA OF THE VALLEY CORPORATION

By: _____
Name:  Ayman Mousa
Title:   Chief Executive Officer

Submitted By:

Edward J. Green (IL Bar No. 6225069)
Geoffrey S. Goodman (IL Bar No. 6272297)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654
(312) 832-4500

David Gould (CA Bar No. 39747)
David Gould, A Professional Corporation
23975 Park Sorrento, Suite 200
Calabasas, CA 91302-4001
(818) 222-8092

40